

# ARKANSAS COURT OF APPEALS

DIVISION III
**No.** CV-17-124

| | |
|---|---|
| ELIZABETH JAMES<br>APPELLANT<br><br>V.<br><br>BUTCH LEE WALCHLI<br>APPELLEE | **Opinion Delivered:** November 29, 2017<br><br>APPEAL FROM THE SEBASTIAN COUNTY CIRCUIT COURT, GREENWOOD DISTRICT<br>[NO. 66GDR-11-228]<br><br>HONORABLE JAMES O. COX JUDGE<br><br>AFFIRMED IN PART; REVERSED AND REMANDED IN PART |

**DAVID M. GLOVER, Judge**

Liz James and Lee Walchli were divorced by decree entered on July 9, 2012. They have one child together, CW, and while they were married Liz adopted AW, who is Lee's child born before the marriage. Primary custody of AW was awarded to Lee, and primary custody of CW was awarded to Liz. The parties have been before the trial court several times since the divorce decree was entered. *See, e.g.*, *James v. Walchli*, 2015 Ark. App. 562, 472 S.W.3d 504. In the instant appeal, Liz challenges the trial court's order directing her to cooperate with Lee in acquiring passports for the children by signing necessary application documents; the trial court's denial of her request for child support; and the trial court's award of attorney's fees to Lee. We do not address Liz's challenge of the order directing her to sign the passport applications because that issue is now moot. Otherwise, we reverse and

SLIP OPINION

remand the trial court's denial of child support; and we affirm the award of attorney's fees to Lee.

The pending matter began with an April 6, 2015 "Motion for Court Order" filed by Lee in which he sought an order from the trial court directing Liz to fully cooperate, including any and all signatures needed, in order to secure the passports for the parties' youngest child, CW, as well as for AW. Lee wanted to secure the passports to ensure CW and AW would be able to travel with his family to Cancun, Mexico, for a vacation that was scheduled for June 26 through July 5, 2015.

On April 20, 2015, Liz filed a motion for modification of order and motion to establish child support. On April 29, 2015, Lee filed a response. Then, there followed a series of motions for continuance, letters, and e-mail correspondence among the parties and trial court, and an order concerning how the matter of passport application would be heard by the court. As a convenience to the parties, the trial court offered a telephone hearing, but that provoked objections from Liz's counsel. Finally, the court decided to hold a telephone conference in the courtroom on May 28, 2015, with a court reporter present, which the parties could attend in person or not.

The trial court opened the telephone conference by noting that "[W]e're here on – there's a number of motions pending, all of which are set for final resolution on a different date than today." Early in the conference, Liz's counsel raised the following objection: "My objection is, the Arkansas Rules of Civil Procedure do not provide for hearings to take place by phone. I object to anything dispositive taking place over the phone, whether it's called a telephone conference or a temporary hearing."

Liz's position was that she is the custodial parent; she did not believe it was in CW's best interest to be issued a passport; she did not have a passport and could not get to CW if something were to happen; and she did not object to vacations within the United States, just no travel that involved a passport. She also raised a due-process-clause issue, citing *Linder v. Linder*, 348 Ark. 322, 72 S.W.3d 841 (2002), stating she was the custodial parent, entitled to the presumption she was acting in the child's best interest, extreme circumstances were not involved, and therefore intervention by the court violated her fundamental rights.

Lee's position was that the telephone hearing was necessary to obtain an emergency order (not a dispositive order) to obtain Liz's consent and cooperation in executing the necessary documents for CW to get a passport. The trial court agreed, explaining the telephone hearing was to facilitate CW's getting a passport; any objections to his traveling to Mexico on June 26 could be dealt with at the subsequent hearing; and the court could decide then whether CW would be allowed to travel. The court then directed that a temporary or emergency order be drafted directing Liz to sign the papers necessary to facilitate CW's passport and to get them to Lee's counsel by the close of business on Friday, May 29, 2015.

On May 29, 2015, the trial court entered its temporary order, which permitted Lee to apply for the passports for CW and AW; directed Liz to immediately sign any necessary consent forms to allow for the passports to be obtained; and specified that the necessary papers were to be delivered to Lee's counsel by May 29, 2015. The temporary order also directed Lee to file all discovery, including the requested financial information from him, which was to be provided under a protective order. The trial court revised its earlier oral

3

ruling allowing a Rule 54(b) certificate, explaining in the temporary order it was denying Liz's request for Rule 54(b) certification because the matter was scheduled for a June 25, 2015 hearing at which time a final order would be entered. Liz proffered her Rule 54(b) certificate. Liz also filed her first notice of appeal on May 29, 2015.

On June 1, 2015, Lee filed a motion for contempt, alleging Liz had failed to supply the passport documents as ordered. On June 2, 2015, the trial court entered its order for purposes of obtaining passports for the minor children. The order explained the history of Liz's noncompliance with the temporary order, and specifically provided that Lee could apply for and obtain United States passports for the parties' minor children without Liz's consent.

On June 15, 2015, Liz filed her response to the motion for contempt. The gist of her response was to affirmatively state she had a good-faith basis for refusing to execute the documents because she believed the trial court was without jurisdiction to enter the order; the trial court's refusal to execute a Rule 54(b) certificate prevented her from appealing the temporary order; she was not successful in obtaining a writ of certiorari from the Arkansas Supreme Court; if she had executed the documentation for the passports as ordered, her issue for appeal would have been deemed moot; and regardless, the contempt motion had been rendered moot because Lee was able to obtain the passports with the entry of the trial court's subsequent order. On June 18, 2015, the trial court entered an amended order for purposes of obtaining the passports for the minor children.

The scheduled June 25 hearing did not take place, but all the outstanding issues, including Liz's request for child support, were heard and addressed by the trial court in a

SLIP OPINION

hearing that took place the following year on July 11, 2016. Pertinent testimony from that hearing will be discussed under the second point of appeal addressing the trial court's denial of child support.

On July 15, 2016, the trial court filed its letter opinion, which addressed all the issues before it, including two contempt motions filed by Liz, a contempt motion filed by Lee regarding the passport situation, Lee's motion for change of custody, both parties' requests for modifications of visitation, and Liz's request for an increase in child support for CW. With respect to the passport matter, the trial court explained:

> The Court had a telephone hearing May 20, 2015, regarding [Lee's] request to obtain passports for the minor boys. The Court set out a very specific directive which was absolutely rejected and disobeyed by [Liz]. [Liz] testified twice in the recent hearing that her attorney told her to defy the Court order which was poor advice. After the Court's Order was entered, no Motion for Stay of the Order was made with the trial court and an immediate appeal was taken, unsuccessfully, to the Arkansas Appellate Courts. The Court finds that [Liz's] actions with regard to this matter are contumacious and in violation of a direct and clear Order of the Court. [Liz] is therefore found in contempt of the Order of this Court and as punishment for that contempt shall forfeit a fine of $1000 to the Clerk of the Court. The Clerk of the Court shall hold that money at interest and the money shall be turned over to [CW] upon his attaining the age of 18 years when it will be paid over to him, together with accrued interest.

The letter opinion also notified Lee he could file a petition for fees and costs as it related to his efforts to obtain passports for the children. On July 29, 2016, Lee filed a motion for attorney's fees and costs; his attachments included an itemized billing statement from his attorney. On August 15, 2016, Liz filed her response.

On October 21, 2016, the trial court entered its final order from the July 11, 2016 proceedings. The order closely tracked its letter opinion. On November 18, 2016, Liz filed a notice of appeal and designated several of the motions leading up to and including

the final order. On November 23, 2016, the trial court entered an order awarding attorney's fees to Lee regarding his efforts associated with obtaining passports for the children. Liz then amended her notice of appeal to add the November 23, 2016 order.

For her first point of appeal, Liz contends the trial court clearly erred in ordering her to sign the application for a passport for CW and in the manner in which the motion for court order was adjudicated, *i.e.*, by telephone conference. We do not address this issue because it is now moot.

Generally, an issue is moot if any judgment or opinion issued by a court would have no practical effect upon a then existing legal controversy. *Poland v. Poland*, 2017 Ark. App. 178, 518 S.W.3d 98. A case becomes moot if a controversy ceases to exist between the parties at any stage of the legal proceedings, including the appeal. *Id.* An opinion rendered on an issue that is moot would be advisory, and we do not render advisory opinions. *Id.* We have recognized three exceptions to the mootness doctrine——issues that are capable of repetition, yet evade review; issues that raise considerations of substantial public interest, which if addressed would prevent future litigation; and issues that have collateral consequences, as in those that attend felony convictions, misdemeanor convictions, criminal contempt, and orders of protection. *Id.*

Liz counters the mootness argument, first by contending the May 29, 2015 order is not moot. She argues that a judgment from our court *will* have a practical legal effect on an existing controversy, *i.e.*, the "controversy over CW having and maintaining a passport." We do not find her argument convincing.

Here, not only has the time for the trip to Mexico come and gone—in the summer of 2015—CW was able to get a passport and go on the trip. Even more importantly, Liz defied the trial court's order directing her to sign the passport application—so she never even did the thing she now contends the trial court erred in ordering her to do. Further, it is no longer necessary for her to sign the passport documents because the passport was obtained without her signature.

The May 29, 2015 temporary order directed Liz to cooperate and to sign the necessary passport-application documents. It was always clear that the May 29 temporary order was entered to facilitate the passport-application process but that the trial court would entertain any other issues or concerns about the actual trip at a subsequent hearing. Any controversy would be new, involving Liz trying to get the passport revoked, gaining control of the passport itself, or controlling how and when the passport is used by CW. The May 29, 2015 temporary order directing her to sign the papers is no longer an existing controversy. The issue of whether the trial court erred in ordering her to cooperate with the passport-application process and to sign any necessary documents is therefore moot. An opinion from our court would have no practical effect upon that legal controversy and would only be advisory.

We note that Liz includes in her argument an assertion that opinion from our court finding error "would impact the trial court's contempt finding for Liz failing to abide by [the May 29] order, for which Liz was ordered to pay $1000 into the registry of the circuit court for CW to have when he turns eighteen." The problem is, she does not challenge the trial court's contempt finding; she just offers this comment in reply to the mootness

argument. She also contends that opinion from our court on this issue would afford her a remedy by ordering Lee to surrender CW's passport to Liz. The temporary order and all the hearings and discussions surrounding it involved getting Liz to sign the documents so the passport could be obtained. Where the passport was to reside and how it was to be thereafter used were left for another day. An opinion from our court finding error in directing Liz to sign the application documents—a finding we do not make in any way, and which would concern an order Liz defied and did not do anyway—would have no practical legal effect on an existing legal controversy. That was the legal controversy then. Any legal controversy now would be different, and our opinion would have no practical legal effect.

Liz further argues that even if our court were to determine the issue is moot, this case falls under two of the exceptions to the mootness doctrine because it is capable of repetition yet evading review and it involves a substantial public interest. She argues that the issue of substantial public interest is that a trial court's ordering a custodial parent to execute passport documents so that a noncustodial parent can obtain and maintain a passport for the child over the custodial parent's objection implicates constitutional rights afforded custodial parents; that it is an issue of first impression in Arkansas, and this court's opinion would thwart future litigation on the issue; and that the issue is capable of repetition without receiving judicial review. We are not convinced that an issue of this nature arises so often as to present a matter of substantial public interest or that it would escape review.

For her second point of appeal, Liz contends the trial court clearly erred in failing to establish an award of child support in her favor. We agree.

For purposes of this child-support issue, the most pertinent testimony from the July 11, 2016 bench trial involved that of Clay Glasgow, a CPA who performed a forensic accounting of Lee's income for the applicable period of time. Lee and his wife each claimed to know very little about Lee's income from his company. Glasgow was qualified as an expert witness, and he detailed the records he had been able to examine and described the information that was not made available to him. He then gave his opinion about the range of income for Lee. He explained he believed the low-end, conservative estimate would be $300,000 for the two-year period of 2013 and 2014 and the high-end estimate of Lee's income would be $552,787 for the same period. Liz testified about her annual income and identified her 2015 W-2 that reflected $37,803.33.

The October 21, 2016 final order provides in pertinent part:

11. The court heard a great deal of information about the Defendant's financial situation, and the Defendant's financial situation is indeed strange. *No one told the court what the Defendant made, nor could anyone, including a very talented CPA, determine how much money the Defendant was actually making from the information that we had. The court, like the CPA, questions the accuracy of the Defendant's tax returns that were introduced into evidence.*

12. The Plaintiff, Elizabeth James, was very forthcoming with information with regard to her income.

13. *Since each party still has one of the children of the marriage, support will not be modified.*

(Emphasis added.)

We find clear error in the trial court's findings about Lee's income. Moreover, the trial court did not engage in the necessary analysis to address the child-support issue. Lee was obliged to present evidence of his financial situation in a manner that would be clear and understandable so the trial court could apply Administrative Order No. 10 and pertinent

9

case law.  Because Lee was self-employed, his 2013 and 2014 income tax returns were important.  Both the CPA and the trial court questioned the accuracy of those returns.  The CPA, as an expert, rendered an opinion that put Lee's income in the range of $300,000 to $552,787 for the two-year period of 2013–2014.  Even though the CPA acknowledged he was without certain information about the business (because it was not provided), he was still able to offer his opinion on a range of income.  Consequently, we find clear error in the trial court's finding that "[n]o one told the court what the Defendant made, nor could anyone, including a very talented CPA, determine how much money the Defendant was actually making from the information that we had."  It is unsettling to our court that Lee dodged his obligation to provide the court with the kind of financial information that would allow the court to properly analyze the child-support issues, that Liz was required to pay for a CPA to untangle the financial information and render an opinion, and that the trial court then found "nobody knows" how much Lee makes and concluded that because the parties each have one child to support, the support obligations should remain the same, thereby side stepping the issue entirely.  We therefore reverse the trial court's ruling on child-support and remand that matter for further proceedings consistent with this opinion.  On this issue, we direct the trial court to follow Administrative Order No. 10(c), addressing calculation of support for self-employed payors, specifically the procedure for determining child support by using the net-worth method.

For her final point of appeal, Liz contends the trial court abused its discretion in awarding attorney's fees to Lee.  We find no abuse of discretion.

Generally, attorney's fees are not allowed in the absence of a statute permitting their allowance. *Vice v. Vice*, 2016 Ark. App. 504, 505 S.W.3d 719; *also see Sherman v. Boeckmann*, 2016 Ark. App. 568, 507 S.W.3d 535. However, a trial court has inherent power to award attorney's fees in domestic-relations proceedings, and whether to do so and the amount thereof are matters within the trial court's discretion. *Vice*, *supra*. When considering requests for attorney's fees, an analysis of the factors set forth in *Chrisco v. Sun Industries, Inc.*, 304 Ark. 227, 800 S.W.2d 717 (1990), is no longer required in domestic-relations cases. *Id*. Due to the trial court's intimate acquaintance with the record and the quality of services rendered, we usually recognize the superior perspective of the trial court in making a determination on the issue of attorney's fees. *Id*. A trial court's decision related to attorney's fees will not be disturbed on appeal absent an abuse of discretion. *Id*.

In its letter opinion, the trial court explained its rationale for finding Liz in contempt of the trial court's order to cooperate with Lee and sign any necessary documents for the passport-application process, explaining that her actions in refusing to do so were contumacious and in violation of a direct and clear court order. As noted previously, Liz understandably does not challenge the finding of contempt. The court also included the following provision in its letter opinion: "[Lee] may file a Petition for fees and costs as it relates to his petition and action to obtain passports for the minor children." On July 29, 2016, Lee's counsel filed his motion for attorney's fees and reimbursement of costs. He attached an itemized billing statement for $5,006.16, along with a request for costs in the amount of $1,124.95. In its order of November 23, 2016, the trial court awarded the requested attorney's fees in the amount of $5,006.16, finding the itemized billing statement

"perfectly reasonable." The trial court rejected the requested costs, finding those expenses were normal expenses associated with obtaining passports for the minor children. Lee does not challenge the rejection of his request for costs. Liz challenges the award of fees on two main bases: 1) the trial court did not consider the relative financial positions of the parties; and 2) the itemized statement "included charges for matters wholly unrelated to the 'fees and costs as it relates to [Lee's] petition and actions to obtain passports.'"

With respect to the relative financial positions of the parties, we agree there is a disparity in favor of Lee. However, the trial court found that Liz's "actions with regard to this matter are contumacious and in violation of a direct and clear Order of the Court." Liz does not even challenge the trial court's finding of contempt in this matter, and the trial court specifically limited the fee award to the passport matter. It was entirely within her control to obey the court's order and avoid paying the attorney's fees and costs associated therewith. She chose not to do so. The trial court's award of fees thus served the dual purpose of sanctioning Liz for disregarding the court's order. Under these circumstances, we find no abuse of discretion in the trial court's award of fees despite the disparity in income.

With respect to Liz's challenge of some of the fees as not being related to the passport matter, we disagree. She specifically challenges the following fees: 1) "reviewing and/or responding to Liz's petition for writ of certiorari and other documents related to perfecting that writ with the Supreme Court of Arkansas (which accounts for over $2,000 of the alleged attorney's fees and which is a matter that was not before the trial court)"; 2) "drafting Interrogatories to Liz after the conclusion of the telephone conference regarding the passport

12

issue"; 3) "preparing or reviewing various contempt motions and responses thereto"; 4) "reviewing Liz's response to Lee's request for an ad litem"; 5) "reviewing Liz's continuance requests for the final hearing and responding thereto"; 6) "charges for communications between the attorneys related to Lee's denial of Liz's summer weekend visitation"; and 7) "charges incurred in relation to Lee's request for attorney's fees."  However, other than to claim these fees were "wholly unrelated" to Lee's petition and actions to obtain passports for the minor children, Liz does not explain why, and it is not evident to us without further explanation.  Moreover, the trial court, which had set the boundaries for the fees and was intimately acquainted with the record and the quality of services rendered, found them to be "perfectly reasonable."

Recognizing the trial court's superior perspective in deciding issues related to an award of attorney's fees, especially under the circumstances presented here, we find no abuse of discretion in the trial court's decision to require Liz to pay the attorney's fees that were associated with Lee's efforts to obtain passports for the minor children.

Affirmed in part; reversed and remanded in part.

GLADWIN and HIXSON, JJ., agree.

*Lightle, Raney, Streit & Streit, LLP*, by: *Jonathan R. Streit*, for appellant.

*Phillip J. Milligan* and *Robert S. Tschiemer*, for appellee.