

# ARKANSAS COURT OF APPEALS
## DIVISION I
**No.** CV–15–54

| | | |
|---|---|---|
| HARRY CUMMINGS<br>APPELLANT | | **Opinion Delivered:** SEPTEMBER 7, 2016 |
| V. | | APPEAL FROM THE POLK COUNTY<br>CIRCUIT COURT<br>[NO. DR–2010-111-2] |
| | | HONORABLE J.W. LOONEY, JUDGE |
| REBEKAH A. CUMMINGS<br>APPELLEE | | AFFIRMED |

**ROBERT J. GLADWIN, Chief Judge**

This appeal returns to our court following our order for rebriefing. *See Cummings v. Cummings*, 2015 Ark. App. 517. With the deficiency that necessitated rebriefing cured, we now address the merits of Harry Cummings's domestic-relations appeal. On appeal, we must decide whether the trial court erred by holding Harry in contempt and with its award of alimony to Rebekah Cummings. Finding no error, we affirm.

### I.    *Facts and Procedural History*

On April 23, 2010, after nearly twenty years of marriage, Harry filed a complaint for divorce from Rebekah. Rebekah answered the complaint and counterclaimed for divorce requesting temporary and permanent alimony.

Following a final divorce trial, the trial court granted the parties' divorce and ordered their personal property divided. The trial court took the remaining issues under advisement. Later, the court issued a letter opinion outlining its ruling on the outstanding issues. For purposes of our review, we note that the trial court's letter opinion ordered (1) that the

marital home would be listed with a realtor for three months, and if not sold during that time, it would be sold at auction for an amount greater than or equal to the parties' indebtedness on the house;[1] (2) that Harry pay rehabilitative alimony in the amount of $500 per month for five years commencing after the marital home was sold; and (3) that Rebekah had a fifty-percent interest in Harry's military retirement benefits. A final divorce decree memorializing the court's ruling was entered on July 19, 2011.

The trial court entered an amended final decree on December 22, 2011, after the sale of the marital home. This decree set a date for alimony payments to commence and provided a formula for calculating the amount of Harry's retirement benefits to which Rebekah was entitled.

On January 4, 2012, Harry filed a motion seeking to have his alimony reduced. In his motion, Harry asserted that the parties' divorce decree awarded him $15,956 from Rebekah's share of the net sales proceeds of the house. But, based on the sales price of the house, only $3,329.90 was available. He petitioned the court for an offset in the amount of $12,626.10 and asked the court to reduce his rehabilitative alimony payments to $289.56 per month for five years to satisfy this amount. Rebekah objected to this, but, in a second amended final decree, the trial court ultimately reduced Harry's alimony obligation to $289.56 per month to offset the credit balance owed to him by Rebekah.

---

[1] The marital home was ultimately sold at public auction on November 22, 2011. The house sold for $161,000. After the proceeds of the sale were applied to the indebtedness on the house and the costs of the sale, a sum of $6,659.81 remained.

Following the entry of the second amended final decree, an issue regarding Harry's retirement benefits arose. Around November 2012, Harry retired and, shortly thereafter, he was placed on full disability. The disability classification resulted in a loss of retirement benefits.

On March 20, 2013, Rebekah petitioned the trial court to modify alimony to compensate for the change in Harry's retirement benefits.[2] Harry objected to any increase in alimony.

In her motion, Rebekah also argued that Harry was not providing her with information regarding his military benefits. On October 7, 2013, the trial court ordered Harry to provide retirement information and status to Rebekah. On November 5, 2013, Rebekah filed a motion for contempt alleging that Harry had failed to comply with her requests for information.

Ultimately, the trial court issued a letter opinion outlining its decision regarding Rebekah's alimony. The court took into account Harry's disability benefits and his lack of retirement benefits when it determined alimony.

On May 20, 2014, the trial court entered a "Military Pension Division Order." This order directed the government to divide Harry's military benefits. According to the March 2014 letter from the court, the division was ordered in response to Rebekah's alimony request. However, the order itself does not identify the payments to Rebekah as alimony. The automatic payments by the government to Rebekah did not commence.

---

[2] Under federal law, disability income is not subject to division. However, a court may consider disability benefits when awarding alimony. *Murphy v. Murphy*, 302 Ark. 157, 787 S.W.2d 684 (1990).

On June 30, 2014, Rebekah filed a second motion for contempt. In this motion, she alleged again that Harry should be held in contempt of court for his failure to pay his court-ordered alimony. Following the filing of the motion, the trial court entered an "Amended Military Pension Division Order" on July 30, 2014. The only noticeable change from this order and the previous military pension division order is an increase in the amount Harry was delinquent with his payments. Once again, the automatic payments to Rebekah did not commence.

The trial court held a hearing on August 27, 2014, to consider all outstanding issues. An order memorializing the court's ruling was entered on September 15, 2014. In that order, the court retroactively modified Rebekah's alimony to $590.14 per month and awarded her a judgment for $33,685.73 in unpaid alimony plus interest. Harry was held in contempt for his failure to pay alimony as well as his failure to comply with court orders regarding discovery. Harry filed a notice of appeal of this order on October 2, 2014.

On November 5, 2014, Harry filed a motion to vacate previous orders of the court and rescind orders of contempt. The trial court denied the motion in an order file marked on December 19, 2014. That same day, Harry filed a second notice of appeal challenging the order denying the motion to vacate. Harry filed the record on appeal in this case on January 21, 2015.

## II.    *Jurisdiction*

We must begin by considering a jurisdictional issue that affects the scope of our review of this appeal. There are two notices of appeal before this court. The first notice, filed on October 2, 2014, followed the trial court's order that gave Rebekah a judgment on

SLIP OPINION

Harry's retirement benefits, modified alimony, and held Harry in contempt of court. The second notice of appeal was filed on December 19, 2014, and challenges only the trial court's order denying the motion to vacate.

Harry filed his record on appeal on January 21, 2015. He did not request any extensions for filing his record. Rule 5(a) of the Arkansas Rules of Appellate Procedure–Civil (2016) requires that the record on appeal be filed with the clerk and docketed therein within ninety days from the filing of the first notice of appeal. The timely filing of a record on appeal is a jurisdictional issue for the court, and strict compliance is required. *Hickson v. Ark. Dep't of Human Servs.*, 357 Ark. 577, 182 S.W.3d 483 (2004). The failure to strictly comply robs the court of jurisdiction to hear the appeal. *Id.*

In this case, the record was lodged more than ninety days after the first notice of appeal was filed. Because of this, our court is without jurisdiction to consider the propriety of the September 2014 order. However, the record was timely filed with respect to the second notice of appeal challenging the order denying the motion to vacate. Therefore, we are left with the mere determination of whether the trial court erred in denying Harry's motion to vacate. With this established, we now turn our attention to whether the circuit court erred by refusing to vacate its decisions regarding the contempt finding against Harry and its award of alimony to Rebekah.

### III. *The Motion to Vacate*

Arkansas Rule of Civil Procedure 60(a) (2016) allows a court to "modify or vacate a judgment, order or decree . . . within ninety days of its having been filed with the clerk."

After ninety days, the court's power to vacate or modify a judgment is limited by Rule 60(c) to reasons such as fraud. Ark. R. Civ. P. 60(c)(4).

It is well established that it is within the discretion of the trial court to determine whether it has jurisdiction under Rule 60 to set aside a judgment. *Grand Valley Ridge, LLC v. Metropolitan Nat'l Bank*, 2012 Ark. 121, 388 S.W.3d 24. A trial court abuses its discretion when it exercises its discretion improvidently, or thoughtlessly and without due consideration. *Delgado v. Delgado*, 2012 Ark. App. 100, 389 S.W.3d 52.

Harry attempts to allege fraud in his motion to vacate, stating that "information and evidence provided to this court previously was erroneous and not submitted in 'good faith,' and as such constitutes a fraud upon this court." The party seeking to set aside a judgment on the basis of fraud has the burden of proving fraud by clear, cogent, and convincing evidence, or as our courts have sometimes said, by clear, strong, and satisfactory proof. *Grand Valley, supra.* Harry failed to offer any satisfactory evidence of fraud, and we conclude that the court could not have abused its discretion in refusing to vacate any of its orders that were more than ninety days old. Accordingly, we are left to consider only whether the trial court abused its discretion in refusing to vacate its September 2014 judgment.

We first consider whether the trial court abused its discretion in refusing to rescind the contempt finding against Harry. Harry bases his argument for reversal on the premise that the trial court abused its discretion in holding him in contempt for failure to pay alimony. However, the trial court's judgment provided two reasons for its contempt finding—failure to comply with discovery requests and failure to pay alimony as directed. When two alternative reasons are given for a decision and an appellant attacks only one, this

court must affirm. *Pearrow v. Feagin*, 300 Ark. 274, 778 S.W.2d 941 (1989). Accordingly, we affirm the trial court's contempt finding without further discussion.

Harry's second point on appeal is that the trial court erred in awarding Rebekah alimony based on his military disability benefits. The September 2014 judgment awarded Rebekah $590.14 per month in alimony retroactive to April 2013. This award was an increase from the amount of alimony originally ordered by the trial court, and the trial court's decision to increase Rebekah's alimony accounted for Harry's decrease in retirement benefits and increase in disability benefits.

The decision to grant alimony lies within the sound discretion of the trial court and will not be reversed on appeal absent an abuse of discretion. *Taylor v. Taylor*, 369 Ark. 31, 250 S.W.3d 232 (2007). The purpose of alimony is to rectify the economic imbalance in the earning power and standard of living of the divorcing parties in light of the particular facts of each case. *Wadley v. Wadley*, 2012 Ark. App. 208, 395 S.W.3d 411. The primary factors to consider are the financial need of one spouse and the other spouse's ability to pay. Other factors include the financial circumstances of both parties; the couple's past standard of living; the value of jointly owned property; the amount and nature of the income, both current and anticipated, of both parties; the extent and nature of the resources and assets of each party; the amount of each party's spendable income; the earning ability and capacity of both parties; the disposition of the homestead or jointly owned property; the condition of health and medical needs of the parties; and the duration of the marriage. *Id.*

The evidence before the trial court establishes that the parties had a nearly twenty-two year marriage. It also clearly reflected income disparity between the parties. According

to their affidavits of financial means, Harry had $5,162.08 per month in income, and Rebekah had $1,190.75 per month in income. The trial court originally contemplated that, in addition to her alimony payments, Rebekah would be receiving a portion of Harry's retirement payments. These retirement payments did not come to fruition when he was declared disabled, and the court took into account his disability benefits when it increased Harry's alimony payments to Rebekah. Our law is clear that a court may consider disability income as a basis for determining alimony. *Murphy*, *supra*. Based on the disparity in income and the length of the parties' marriage, we cannot say that the trial court abused its discretion in its alimony award.

Affirmed.

HOOFMAN and BROWN, JJ., agree.

*Orvin W. Foster*, for appellant.

*The Troutt Law Firm*, by: *R. Scott Troutt*, for appellee.