SLIP OPINION

Cite as 2016 Ark. 383

# SUPREME COURT OF ARKANSAS

No. CR-16-207

| | |
|---|---|
| THEODIS N. THOMPSON, JR.<br>APPELLANT | **Opinion Delivered** November 10, 2016 |
| V. | APPEAL FROM THE PRAIRIE COUNTY CIRCUIT COURT, NORTHERN DISTRICT [NO. CR-2014-25] |
| STATE OF ARKANSAS<br>APPELLEE | HONORABLE TOM HUGHES, JUDGE |
| | REVERSED AND DISMISSED. |

**KAREN R. BAKER, Associate Justice**

Attorney Theodis N. Thompson, Jr., appeals from an order of the Prairie County Circuit Court finding him in criminal contempt for his failure to appear at a scheduled hearing. Pursuant to the circuit court's order, Thompson served a sentence of twenty-four hours imprisonment. On appeal, Thompson argues that his right to due process was violated because he was deprived of proper notice of the criminal-contempt charge. In response, the State responds that because Thompson has already served his sentence of imprisonment, Thompson's appeal is moot and we should dismiss his appeal. We reverse and dismiss.

The facts related to this appeal stem from Thompson's representation of defendant Michael Baker on criminal charges in the Prairie County Circuit Court. Baker's case was scheduled for a hearing on September 22, 2015. On August 28, 2015, Thompson sent a letter to the circuit court and indicated that he was unable to attend that September 22, 2015 hearing because he was scheduled to attend a continuing-legal-education course ("CLE") that

day. On September 4, 2015, the circuit court sent a letter to Thompson acknowledging receipt of Thompson's August 28, 2015 letter. The circuit court's letter indicated that if Thompson wished to have the September 22, 2015 hearing continued, he should file a motion for continuance. On September 11, 2015, Thompson filed a motion for continuance, but the court never acted on the motion.

On September 22, 2015, neither Thompson nor Baker appeared at the hearing. Prosecutor Rebecca Reed McCoy called Thompson, and Thompson indicated that he was attending a CLE and was not coming to court. McCoy and Thompson rescheduled Baker's hearing for November 17, 2015. On September 23, 2015, Thompson faxed a letter to the circuit court to confirm that the hearing was scheduled for November 17, 2015, at 9:00 a.m. At the conclusion of the September 22, 2015 hearing, the circuit court instructed the prosecutor to prepare an order to show cause.

On September 23, 2015, the State, by and through Deputy Prosecutor Timothy O. Isaac, filed its petition to appear and show cause. On September 24, 2015, the circuit court granted the State's petition and ordered Thompson to appear and show cause on November 17, 2015, at 9:00 a.m. The order reflected that the notice had been served according to Rule 5 of the Arkansas Rules of Civil Procedure.

On November 17, 2015, Thompson appeared for Baker's probation-revocation hearing. The circuit court announced that it would first hear the order to show cause. In response to the circuit court, Thompson explained that he was there to represent Baker at the probation-revocation hearing and alleged that he had not received notice of the order to show

2

cause. The following colloquy occurred:

THE COURT: I just want to determine if the Order to Show Cause, which I'm looking at now, which requested that Counsel be cited to appear in front of this Court to show cause, if any, why he failed to appear and represent his client, Michael Baker, in case CR–2014–25, which case was set for hearing on September 22, 2015. The Court having examined the docket entries, considered the facts presented, and reviewed correspondence with the Court and Theodis M. Thompson, Jr., finds that it should be and is hereby granted. And it is hereby ordered that you are to appear at the Courthouse today at 9:00 to show why you should not be adjudged in contempt of court. It goes on, service may be had as provided by Rule 5 of the Arkansas Rules of Civil Procedure. And I don't see service.

PROSECUTOR ISSAC: I have a Certificate of Service that said it was placed in first class mail on September 24, 2015.

THOMPSON: I filed a motion -- Your Honor, I filed a Motion for a Continuance on this matter. I just was retained on this and I was assured by court staff that I would be able to get the continuance. Unfortunately, an Order had not been presented allowing my Motion for Continuance. I do believe that the actual Motion that I filed after being retained on this matter requesting that this matter be continued unfortunately there wasn't ever a Motion -- excuse me -- an Order granting that Continuance.

THE COURT: Counsel, you do understand that filing a Motion is not the same as being an order?

THOMPSON: I realize that, Your Honor. And I understand --

COURT: And if you're testifying - - or if you're representing to me that someone other than I have the power or implied they had the power to grant a continuance, I would find that very difficult –

THOMPSON: And, Your Honor, I'm not saying that at all. I'm just

3

simply saying, Your Honor, that based on my belief that the Order will be sent -- and, Your Honor, not looking back at the file and seeing the Order being presented, it was my understanding that it was going to be someone -- it was going to be a continuance made, I would have asked for someone to stand in my stead on that particular date, Your Honor, had I known that that was not going to be given. And also to --

THE COURT:            Well, Counsel, at this point, the Order has been served. You are here. I intend to have a hearing on this. We can do it today. That's the day it's scheduled for. Are you ready to proceed, Mr. Issac?

PROSECUTOR ISSAC:     The State is ready to proceed.

THE COURT:            And, Mr. Thompson, you're here and it's not a matter of if you're willing to proceed. We are proceeding.

THOMPSON:             Okay.

THE COURT:            . . . And, Mr. Thompson, do you plan to testify?

THOMPSON:             No, Your Honor.

THE COURT:            Very good. And who do you intend to call as a witness?

THOMPSON:             And, Your Honor, just to make sure, we're hearing the matter on the Order to Show Cause, is that correct?

THE COURT:            Yes, sir.

THOMPSON:             Okay.

THE COURT:            The Order to Show Cause -- you should have a copy of that Order.

THOMPSON:             That's what I'm saying. I don't have a copy of that Order. I mean, I don't have that.

THE COURT:            Well, then there's going to have to be some presentation to establish that you have been properly served.

THOMPSON: I mean, if that's going to require me to testify as far as the Order to Show Cause, then yeah, I would like to testify. But I don't have a copy of that particular order.

. . . .

THE COURT: Let Mr. Issac respond. Mr. Issac was to serve the Notice. The Order reflects, that was signed by the Court, that it may be served in accordance with Rule 5 of the Arkansas Rules of Civil Procedure. We now have Mr. Thompson alleging that he was not served in accordance with Rule 5. If he wasn't well he'll be re-served. If he was and there's proof of that, the Court is going to go forward.

PROSECUTOR ISSAC: Well, the State just asserts that we believe we followed the Rules of Civil Procedure since it is an already filed case that it's part of, that first class mailing is sufficient.

THE COURT: So you sent it by first class mail?

PROSECUTOR ISSAC: I did. And it's presumed to be served upon depositing into the mail. So we believe it's seen served.

THE COURT: Okay. I find that it has been served as far as the Rules of Procedure are required. And Mr. Thompson appears to be aware of the facts surrounding the incident. So we're going to go ahead and --

THOMPSON: No, Your Honor. I mean, my understanding today was that we would have our hearing scheduled for my client's plea and arraignment regarding his revocation. I don't understand the facts on this Order to Show Cause. I was never given notice of this. I had no knowledge of this. And standing here before you today saying that, you know, my Motion for Continuance, which the Court has record of, although an Order hadn't been entered, I wasn't aware of this matter going forward on an Order to Show Cause. I don't believe that I'm in violation of --

THE COURT: That's what we have trials for. Go forward, Mr. Issac. And, Mr. Thompson, you may have a seat. Now, Mr. Isaac, do you have proof of service?

PROSECUTOR ISSAC:    I have my copy of the Certificate of Service.

THE COURT:    It's not been filed with the Court.

PROSECUTOR ISSAC:    It was filed on September 24, 2015.

THE COURT:    It may show that, but it's not in the Court file.  If it is, it's not in the order it should be.

PROSECUTOR ISSAC:    If I can approach, you can see my copy.

THE COURT:    Yes, sir.  Well, this is in the court file. . . .

. . . .

THE COURT:    . . . Okay, here we go.  I hereby certify that on September 24, 2015 I deposited a pleading with the United States Postal Service with first class mail postage prepared addressed to Theodis M. Thompson, Jr., it gives the address, and that's attached to the Petition for Order to Show Cause.  I do see that now.

At the conclusion of the hearing, the circuit court found Thompson in criminal contempt of court for his failure to appear for the September 22, 2015 hearing and sentenced him to twenty-four hours imprisonment in the Prairie County Jail.  Thompson served his sentence of imprisonment, and thereafter, filed a motion for new trial, which the circuit court denied without a hearing.  On December 15, 2015, Thompson filed his notice of appeal.

On appeal, Thompson argues that his right to due process was violated because he was deprived of proper notice of the criminal contempt charge.  The standard of review in a case of criminal contempt is well settled: an appellate court views the record in the light most favorable to the trial court's decision and sustains that decision if it is supported by substantial evidence.  *Conlee v. Conlee*, 370 Ark. 89, 257 S.W.3d 543 (2007).  Substantial evidence is

evidence of a sufficient force and character to compel a conclusion one way or another, forcing the mind to pass beyond suspicion or conjecture. *Id*.; *Witherspoon v. State*, 322 Ark. 376, 909 S.W.2d 314 (1995). Where a person is held in contempt for failure or refusal to abide by a judge's order, the reviewing court will not look behind the order to determine whether it is valid. *Conlee*, *supra*.

## I. *Mootness*

As a threshold matter, we must determine whether the issue before us is moot. On appeal, the State argues that Thompson's appeal is moot pursuant to our precedent in *Swindle v. State*, 373 Ark. 518, 285 S.W.3d 200 (2008), which indicates that an appeal from a finding of criminal contempt is moot once the sentence has been served. In *Swindle*, the circuit court found an attorney in criminal contempt for failing to comply with the court's standing order to request a jury trial for his client forty-eight hours before the scheduled trial date. However, we held that Swindle's challenges to the circuit court's order of contempt were moot due to the fact that Swindle had already served his sentence of confinement. Thompson contends that *Swindle* is flawed and asks that the opinion be overruled.

We find Thompson's position persuasive for the reasons that follow. Arkansas Code Annotated section 16-91-101(a) states that "any person convicted of a misdemeanor or a felony by virtue of a trial in any circuit court of this state has the right of appeal to the Supreme Court." Further, Rule 1(a) of the Rules of Appellate Procedure–Criminal states that "any person convicted of a misdemeanor or a felony by virtue of a trial in any circuit court of this state has the right to appeal to the Arkansas Court of Appeals or to the Supreme Court

of Arkansas." Further, we note that Rule 1(c) of the Rules of Appellate Procedure–Criminal provides that "upon the death of a defendant, the appeal shall not abate. The appeal shall continue on the relation of a representative party as provided in Ark. R. Civ. P. 25(a)." Accordingly, an appeal does not abate even upon the death of a defendant.

Here, Thompson was clearly convicted of a misdemeanor because the criminal contempt statute that he was found guilty of violating states that "punishment for contempt is a Class C misdemeanor." Ark. Code Ann. § 16-10-108(b)(1). Because Thompson was convicted of a misdemeanor, he has the right to appeal to the Supreme Court pursuant to Arkansas Code Annotated section 16-91-101(a) and Rule 1(a) of the Rules of Appellate Procedure–Criminal. Stated differently, the mootness doctrine does not bar a direct appeal from Thompson's criminal-contempt conviction, despite the fact that Thompson has already served his sentence. Based on our discussion, we hold that a defendant's right to a direct appeal from his or her criminal conviction continues after his service of confinement. Thus, *Swindle* is clearly wrong to the extent that it conflicts with our holding that the mootness doctrine does not bar Thompson's direct appeal of his criminal contempt conviction.

## II. *Criminal Contempt*

Having established that this appeal is properly before this court, we now turn to the crux of Thompson's argument–that he did not receive notice of the September 24, 2015 order to appear and show cause pursuant to Arkansas Code Annotated section 16–10–108.

Our review of section 16–10–108(c), the statute at issue here, requires that we construe criminal statutes strictly, resolving any doubts in favor of the defendant. *James v. Pulaski Cty*.

*Circuit Court*, 2014 Ark. 305, 439 S.W.3d 19 (citing *Short v. State*, 349 Ark. 492, 79 S.W.3d 313 (2002). "We construe a statute just as it reads, giving the words their ordinary and usually accepted meaning in common language, and if the language of the statute is plain and unambiguous, and conveys a clear and definite meaning, there is no occasion to resort to rules of statutory interpretation." *Id.* (citing *Walden v. State*, 2014 Ark. 193, at 7–8, 433 S.W.3d 864, 870)).

Although the State asserts and the circuit court found that Rule 5 of the Arkansas Rules of Civil Procedure had been complied with, we have held that the rules of civil procedure do not apply in a criminal contempt proceeding. *Valley v. Pulaski Cty. Circuit Court,* 2014 Ark. 112, 431 S.W.3d 916 (citing *Ark. Dep't of Human Servs. v. R.P.*, 333 Ark. 516, 970 S.W.2d 225 (1998). In *Valley*, we reaffirmed our holding in *R.P.* and explained that the governing provision which sets forth the court's power to punish for criminal contempt is Arkansas Code Annotated section 16-10-108. Section 16-10-108(c) provides that "contempts committed in the immediate view and presence of the court may be punished summarily. In other cases, the party charged shall be notified of the accusation and shall have a reasonable time to make his defense." The purpose of a criminal-contempt proceeding is that it is brought to preserve the power and vindicate the dignity of the court and to punish for disobedience of its order. *Fitzhugh v. State*, 296 Ark. 137, 752 S.W.2d 275 (1988). Criminal penalties may not be imposed on an alleged contemnor who has not been afforded the protections that the Constitution requires of criminal proceedings. *Id.* at 140, 752 S.W.2d at 277. The Due Process Clause, as applied in criminal proceedings, requires that an alleged

contemnor be notified that a charge of contempt is pending against him and be informed of the specific nature of that charge. *Id*.

Based on section 16-10-108(c) and *Valley*, Thompson had to be notified of the accusation of contempt and be afforded a reasonable time to make his defense. The circuit court's factual finding that the petition for order to show cause was deposited "with the United States Postal Service with first class mail postage" was not sufficient to provide Thompson with notice that he was accused of criminal contempt for his failure to appear at the September 22, 2015 hearing. Further, the record fails to demonstrate that Thompson was provided with notice of the order to appear and show cause. We hold that notice in compliance with our constitution was required, and the State failed to establish that Thompson received notice. Therefore, we reverse and dismiss the appeal.[1]

Reversed and dismissed.[2]

_____

[1]Because we reverse and dismiss on this point, we do not reach Thompson's argument regarding the circuit court and prosecutor's conflicts of interest.

[2]Finally, although the dissent questions the majority's reasoning to reverse and dismiss this matter as opposed to reverse and remand the matter, the majority's position is based on the law as applied to the facts which are clearly expressed in our opinion and need no hypothesizing. Further, the dissent's position that the majority elected to reverse and dismiss the matter because we are "concerned with the possibility that Thompson would be found guilty a second time on remand" is nonsensical. To remand this matter to the circuit court for Thompson to be "found guilty a second time" would necessarily create a double jeopardy dilemma. *Halpaine v. State*, 2011 Ark. 517, 5, 385 S.W.3d 838, 841 (2011)("Constitutional protections, including the prohibition against double jeopardy, apply to nonsummary criminal-contempt prosecutions. *United States v. Dixon*, 509 U.S. 688, 113 S.Ct. 2849, 125 L.Ed.2d 556 (1993) (holding that double jeopardy precluded prosecution for an offense after the defendant had been held in criminal contempt for said offense); *see also Fitzhugh v. State*, 296 Ark. 137, 752 S.W.2d 275 (applying the protections afforded by the Due Process Clause to criminal-contempt proceedings)." Finally, it is unnecessary to remand Thompson's appeal

Cite as 2016 Ark. 383

BRILL, C.J., and DANIELSON, J., concur.

Wood and WYNNE, JJ., dissent.

**PAUL E. DANIELSON, Justice, concurring.** I agree with the majority's holding that appellant Theodis N. Thompson, Jr., was not afforded sufficient notice of the circuit court's order to appear and show cause. In my view, Arkansas Code Annotated section 16-10-108(c) (Repl. 2010), and our case law interpreting it, are unclear as to the notice required in cases of criminal contempt. Therefore, I would refer this matter to the appropriate rules committee for review.

In any event, the record in this case is completely devoid of any evidence that Thompson was notified. It is important to note that, while the State purportedly mailed the *petition* for order to appear and show cause to Thompson, the record does not reflect that the *order itself* was ever mailed to him. The order to appear and show cause contains no certificate of service. And, while the circuit court looked over the case file and read a certificate of service aloud in open court, concluding that it constituted proof of service, that certificate of service was attached to the petition, not the order. Thus, even assuming that first-class mail would have been a sufficient method of notifying Thompson, notice was simply not given. The importance of notice of the order itself cannot be overstated; it is the document that commands an accused contemnor to appear and sets forth the date, time, and location for appearance. From my review of the record, the only reason Thompson knew to appear at the November 17, 2015 hearing was that his client's revocation hearing was scheduled for that

to review the due-process claim with regard to notice, as discussed above, based on the record before us, there was no notice.

11

day. In sum, while this court has been less than clear as to what type of notice is required, we have been resolute in holding that it is a due-process requirement:

> [The] distinctions between civil and criminal contempt lead up to the fundamental proposition that criminal penalties may not be imposed on an alleged contemner who has not been afforded the protections that the Constitution requires of criminal proceedings. [*Hicks ex rel. Feiock v. Feiock*, 485 U.S. 624 (1988).] The Due Process Clause, as applied in criminal proceedings, requires that an alleged contemner be notified that a charge of contempt is pending against him and be informed of the specific nature of that charge. *Id*.

*Fitzhugh v. State*, 296 Ark. 137, 140, 752 S.W.2d 275, 277 (1988).

Additionally, my analysis differs from the majority's on the subject of mootness. I would hold that an exception to the mootness doctrine applies because the issue involved here is capable of repetition but evades review. *See, e.g.*, *Delancy v. State*, 356 Ark. 259, 151 S.W.3d 301 (2004).

BRILL, C.J., joins in this concurrence.

**ROBIN F. WYNNE, Justice, dissenting.** Because I believe that Thompson's appeal has been rendered moot by his having served the punishment imposed, I would dismiss the appeal. Accordingly, I respectfully dissent.

An examination of the majority opinion will reveal why the better course would be to dismiss Thompson's appeal. Assuming the majority is correct to reverse on the merits, it has applied the wrong disposition to the case. The majority opinion reverses and dismisses based on the determination that a due-process violation resulted from Thompson's failure to receive notice of the contempt hearing. The proper disposition in the event of such a violation is to reverse *and remand*, not reverse and dismiss. *See, Fitzhugh v. State*, 296 Ark.

137, 752 S.W.2d 275 (1988) (reversing and remanding following a determination that the failure to notify an attorney that a charge of contempt was pending against him and to inform him of the specific nature of the charge violated the attorney's right to due process). Even Thompson realizes this. In his argument he requests that the court reverse and remand for the due-process violation he asserts. The majority has given him relief he did not request as part of his due-process argument.

Why, then, has the majority chosen to reverse and dismiss, as opposed to reversing and remanding? I posit that there are two reasons for this. The first is that dismissing as opposed to remanding allows the majority to sidestep the inconvenient fact that he has already served his sentence for contempt. The fact that the majority feels compelled to overlook this is all the more reason why this is not the case in which this court should reach a different conclusion regarding the applicability of the mootness doctrine than it did in *Swindle v. State*, 373 Ark. 518, 285 S.W.3d 200 (2008). The second reason, which follows from the first, is that the majority is concerned with the possibility that Thompson would be found guilty a second time on remand, which would create the problematic issue of what to do about punishment if that occurs.[1] Either Thompson has already served his full punishment, in which case the damage is done, or Thompson would be subjected to additional punishment, making his victory on appeal a Pyrrhic one of epic proportions. The majority is willing to confuse

---

[1] The majority states that it is dismissing instead of remanding because of a potential double jeopardy concern. Of course reversing and remanding potentially creates a double-jeopardy problem because Thompson has already fully served his punishment. *This is precisely why this court should dismiss the appeal as moot.*

our precedent regarding due-process violations in an effort to avoid the potentially unpleasant effects of its decision.

My point in highlighting these issues is that, while I agree that the decision in *Swindle* is flawed, it is precedent of this court. Thompson took no steps, such as objecting following the decision, asking for a stay pending appeal, asking for adequate time to file a writ with this court, or making any attempt to file a writ with this court, in order to avoid having his appeal become moot. The facts and arguments presented here are insufficient to warrant reaching a different result here than was reached in *Swindle*. I have little doubt there may exist in the future a case that requires us to revisit our decision in *Swindle*. This is not that case.

For these reasons, I respectfully dissent.

Wood, J., joins.

*Jeff Rosenzweig*, for appellant.

*Leslie Rutledge*, Att'y Gen., by: *Christian Harris*, Ass't Att'y Gen., for appellee.