Cite as 2021 Ark. App. 286

# ARKANSAS COURT OF APPEALS
## DIVISIONS I & II
**No.** CV-20-89

| ERIK RYE | | |
|---|---|---|
| | APPELLANT | **Opinion Delivered** June 2, 2021 |
| V. | | APPEAL FROM THE BENTON COUNTY CIRCUIT COURT [NO. 04DR-18-1642] |
| SONIA RYE | | |
| | APPELLEE | HONORABLE JOHN SCOTT, JUDGE |
| | | AFFIRMED IN PART; DISMISSED IN PART |

## RITA W. GRUBER, Judge

This is an appeal from the financial aspects of a divorce. Appellant Erik Rye challenges the Benton County Circuit Court's (1) unequal division of the marital residence, (2) order that he pay rent, both past and future, on the residence, (3) order that he pay all costs of transportation associated with visitation with the couple's minor children, (4) omission of certain bank accounts titled in the name of appellee Sonia Rye in its division of the marital property, (5) contempt citation for failing to comply with the decree, and (6) order awarding Sonia her attorney's fees. We affirm in part and dismiss in part.

## I. *Background*

The parties married in February 2013. They later relocated to Arkansas where both parties were employed at Walmart's corporate headquarters. The parties had two daughters, ages 1 and 3 at the time of separation in September 2018. At the time of separation, the parties were relocating to Bethesda, Maryland, because of employment opportunities. They

had purchased a home in Maryland without a mortgage. Sonia and the younger daughter were in Arkansas while Erik and the older child were in Maryland.

Sonia filed her complaint for divorce on September 12, 2018, seeking a divorce, custody of the minor children, child support, and division of the marital property and debts. Erik answered, denying the material allegations. He later filed a counterclaim seeking a divorce and custody of the children.

An agreed temporary order provided Sonia would have custody of the children; specified Erik's visitation, including telephone calls, with the children; and ordered Erik to pay biweekly child support of $923.63. Erik was to be responsible for all visitation transportation costs because he had no housing expenses.

The case proceeded to a two-day bench trial on March 29 and April 1, 2019. At the conclusion of the trial, the court ruled from the bench and granted Sonia an absolute divorce. Erik was granted visitation with the parties' minor children and ordered to pay child support as initially ordered in the temporary order. In addition, Erik was to be responsible for all visitation transportation expenses. Each party was allowed telephone visitation with the children when they were with the other parent. The court allowed the parties thirty days to equitably divide their household furnishings and furniture. If no agreement were reached, that property would be sold in Maryland and the proceeds divided equally. The court found that Sonia contributed 41.5 percent of the purchase price of the Maryland residence from her own separate premarital funds. The court further found Erik owed Sonia rent for the seven months prior to trial in the approximate amount of $13,800 and ordered him to pay rent of $1,971 per month going forward. This was 41.5 percent of

the fair market rental value. Erik was ordered to pay the arrearage within forty-five days. The court stated that it was making an unequal division of the residence based on Arkansas Code Annotated section 9-12-315 (Repl. 2020) because of Sonia's contribution of separate funds. The court equally divided the marital portion of the parties' 401(k) accounts and other retirement accounts. Erik was ordered to apply for duplicate Social Security cards for the parties' minor children within ten days from the April 1 hearing. Sonia was awarded her attorney's fees and costs, to be determined at a later hearing. The circuit court entered its decree memorializing its bench ruling on May 8, 2019.

On May 23, Erik, through new counsel, filed a motion seeking to vacate or amend the divorce decree. He sought reconsideration of (1) the unequal division of the marital home in Maryland; (2) the order requiring that he pay rent on the marital home; (3) the requirement that he pay all visitation travel expenses; (4) the omission of bank accounts titled in Sonia's name; and (5) the order awarding Sonia her attorney's fees and costs.

On May 30, Sonia petitioned for contempt, alleging that Erik had failed to pay any sum on either the rental arrearage or the current rent. She further asserted that Erik had failed to obtain duplicate Social Security cards for the children by April 11, as ordered. Sonia later amended the contempt petition to allege that Erik was secreting household items and other personal property from the Maryland home so they could not be identified and sold as provided in the decree.

The circuit court held a hearing on the outstanding issues of attorney's fees and contempt on July 3. At the conclusion of the hearing, the court awarded Sonia $36,284 in attorney's fees incurred in the divorce case. The court found Erik in contempt for failing to

pay rent, failing to obtain duplicate Social Security cards for the children, failing to keep Sonia informed of his efforts to obtain the cards, and failing to facilitate phone calls between Sonia and the children. However, the court found that Erik had purged himself of the contempt on the rent issue by paying the sums due. Erik was ordered incarcerated in the Benton County Jail until noon on July 8 or until he could prove that he had applied for the Social Security cards. Erik moved for findings of fact and conclusions of law under Arkansas Rule of Civil Procedure 52(a) on the award of attorney's fees.

On July 8, 2019, the circuit court issued findings of fact and conclusions of law supporting the fee award. The court's order on contempt and the award of attorney's fees was entered on July 11. In addition to the attorney's fees for the divorce case, Erik was also ordered to pay an additional $2,500 in fees for the contempt hearing.

Erik filed his notice of appeal on July 16, 2019, from the divorce decree, the court's findings of fact and conclusions of law, and the July 11 order on contempt and attorney's fees.

## II. *Arguments on Appeal*

Although Erik's first four points arise from the circuit court's rulings in the divorce decree, we must first note that Erik failed to properly extend the time for filing his notice of appeal from the decree. This made his notice of appeal untimely and deprives us of jurisdiction over the appeal from the divorce decree.

Pursuant to Arkansas Rule of Appellate Procedure–Civil 4(a), a notice of appeal *shall* be filed within thirty days from the entry of the judgment, decree, or order appealed from. However, upon the timely filing of certain posttrial motions made no later than ten days

4

after entry of the judgment, the time for filing the notice of appeal is extended and must thereafter be filed within thirty days from entry of the order disposing of the last posttrial motion. Ark. R. App. P.–Civ. 4(b)(1). Computation of the time period for perfecting an appeal is done in accordance with Arkansas Rule of Civil Procedure 6. *Whitmer v. Sullivent*, 373 Ark. 327, 330, 284 S.W.3d 6, 9 (2008); *see also Davis v. Davis*, 2016 Ark. 64, at 4, 487 S.W.3d 803, 805. Rule 6(a) provides the following formula:

> In computing any period of time prescribed or allowed by these rules . . . the day of the act, event or default from which the designated period of time begins to run shall not be included. The last day of the period so computed shall be included, unless it is a Saturday, Sunday, legal holiday, or other day when the clerk's office is closed, in which event the period runs until the end of the next day that the clerk's office is open. When the period of time prescribed or allowed is less than fourteen (14) days, intermediate Saturdays, Sundays, or legal holidays shall be excluded in the computation. As used in this rule and Rule 77(c), "legal holiday" means those days designated as a holiday by the President or Congress of the United States or designated by the laws of this State.

Ark. R. Civ. P. 6(a) (2020).

Here, the divorce decree was entered on Wednesday, May 8, 2019. Erik filed a posttrial motion on May 23. The question is whether this motion was timely. Under Rule 6, the ten-day period to file posttrial motions started on May 9, the day after entry of the decree. In accordance with Rule 6, May 11 (Saturday), May 12 (Sunday), May 18 (Saturday), and May 19 (Sunday) are excluded from the computation, thus setting the due date for any posttrial motions at May 22. However, the problem arises because Erik filed his posttrial motion on May 23, one day late.[1] Because the motion was not timely filed, it

---

[1]We are aware that the circuit court found that Erik's motion was timely in its order denying the motion. However, that finding is clearly erroneous based on the above computation.

cannot serve to extend the time for Erik to file his notice of appeal. *Jackson v. Ark. Power & Light Co.*, 309 Ark. 572, 832 S.W.2d 224 (1992). Therefore, his notice of appeal was due within thirty days of entry of the May 8 decree, or by June 7. *See id*. His notice of appeal was not filed until July 16, well outside the thirty days allowed. The failure to file a timely notice of appeal deprives the appellate court of jurisdiction. *Lewis v. Jewell*, 2020 Ark. App. 184, 598 S.W.3d 67. Because Erik failed to timely file a notice of appeal from the divorce decree, we lack jurisdiction to review the issues related to it and must dismiss that portion of the appeal. *Id*.

### III. *Contempt*

We next turn to Erik's challenge to the circuit court's order holding him in contempt. The court found Erik in contempt for failing to pay rent, failing to obtain duplicate Social Security cards for the children, failing to keep Sonia informed of his efforts to obtain the cards, and failing to facilitate phone calls between Sonia and the children. Willful disobedience of a valid order of a court is contemptuous behavior. *Ivy v. Keith*, 351 Ark. 269, 279, 92 S.W.3d 671, 677 (2002). However, before one can be held in contempt for violating the court's order, the order must be definite in its terms and clear as to what duties it imposes. *Scudder v. Ramsey*, 2013 Ark. 115, at 12, 426 S.W.3d 427, 435. Contempt can be civil or criminal. *Id*., 426 S.W.3d at 435. The purpose of criminal contempt is to preserve power, vindicate the dignity of the court, and punish for disobedience of the court's order. *Id*., 426 S.W.3d at 435. By comparison, civil-contempt proceedings are instituted to preserve and enforce the rights of private parties to suits and to compel obedience to orders made for the benefit of those parties. *Id*., 426 S.W.3d at 435. Here, the contempt finding

was civil because it was designed to compel compliance with the court's orders. Because the contempt finding was civil, the standard of review is whether the circuit court's finding is clearly against the preponderance of the evidence. *Id.* at 13, 426 S.W.3d at 435.

Erik's only argument on appeal is that it was impossible for him to comply with the court's April 11 deadline to apply for duplicate Social Security cards for the children because the divorce decree directing that he do so was not entered until May 8, well after the deadline. He seeks reversal of the contempt finding along with the $2,500 attorney's fee imposed for the contempt.

To support his argument, Erik cites *Martin v. Jimenez*, 2016 Ark. App. 268, 493 S.W.3d 347. However, we cannot address Erik's argument. Unlike the appellant in *Martin*, Erik was held in contempt for multiple reasons, only one of which had a deadline affected by the date of entry of the divorce decree. Erik does not challenge the court's finding him in contempt for these other reasons. His sole argument on contempt is based on *Martin*. By not challenging the circuit court's finding of contempt based upon his failure to facilitate phone calls between Sonia and the children in his initial brief, that independent basis for the contempt ruling remains in place. When two or more alternative reasons are given for a decision and an appellant does not attack them all, we must affirm. *Cummings v. Cummings*, 2016 Ark. App. 375, at 6–7, 499 S.W.3d 221, 225; *Barnett v. Barnett*, 2015 Ark. App. 178; *Ross v. Bugaj*, 2010 Ark. App. 656.

Our colleagues in dissent believe that an appeal of the court's contempt finding only on the Social Security card issue is not barred because Erik is the "master of his appeal," and he appealed from an order entered on July 3 stating that the circuit court had found Erik in

7

contempt and directing the sheriff to confine him. Without commenting on whether an appellant is, in fact, the master of his or her appeal, we disagree with the dissent that the circuit court entered two contempt orders in this case. On July 3, the date of the contempt hearing, the circuit court entered an "Order of Commitment" remanding Erik to the custody of the sheriff and telling the sheriff how long to hold him. Although the sanction appears to be tied to the Social Security card issue, it was not a decision on the merits of the various contempt issues before the court that date. In any case, Erik did not appeal from this order; rather, he appealed "from the order adjudging him in contempt of court with respect to social security cards and phone calls, which order was entered on July 11."[2] It is well settled that orders not mentioned in the notice of appeal are not properly before the appellate court. *E.g.*, *Williams v. St. Vincent Infirmary Med. Ctr.*, 2021 Ark. 14, 615 S.W.3d 721; *Colonel Glenn Health and Rehab, LLC v. Aldrich*, 2020 Ark. App. 222, 599 S.W.3d 344.

The order appealed to us—which the dissent designates "a second contempt order"—was entered on July 11. In this order, the circuit court found Erik in contempt regarding "his obtaining duplicate social security cards for the minor children and his obligation to keep the Plaintiff updated regarding those efforts," "his obligation to facilitate telephone communication between the Plaintiff and the minor children while in his care and custody," and " his obligation to pay rent on the Bethesda residence as ordered but has purged himself of that contempt[.]" The court then sanctioned Erik in the following paragraph:

---

[2]We note that he also appealed "from the order assessing attorney's fees" against him "entered on July 9 and July 11."

8

9. The Court finds that [Erik] shall be incarcerated by separate Order in the Benton County Jail for his civil contempt of this Court's Order. That as additional sanction against [Erik] for such contempt [Erik] is ordered and directed to pay an attorney fee of $2,500.00 to the Plaintiff no later than 5:00 pm on October 5, 2019.

Unlike the dissent, we do not view paragraph 9 of the court's order as clearly tying the jail time to the Social Security-card issue and the attorney's fee to the telephone-visitation issue. Erik himself appears to assume that the $2,500 attorney's fee sanction applies to the Social Security-card issue, requesting several times in his brief for us to reverse the order of contempt on the Social Security-card issue and order the $2,500 fee to be returned to him. However, the court's order does not indicate whether the fee was divisible between the various contempt citations and, if so, how much of the fee was for the particular issue on appeal. Because Erik failed to challenge the alternative bases for the court's finding of contempt, we must affirm. *Cummings*, 2016 Ark. App. 375, at 6–7, 499 S.W.3d at 225; *Barnett*, 2015 Ark. App. 178; *Ross*, 2010 Ark. App. 656.

IV. *Attorney's Fees*

For his last point on appeal, Erik seeks a reversal of the circuit court's award of attorney's fees to Sonia. He argues that the circuit court failed to properly consider the disparity in income in awarding attorney's fees. He also seeks to have us overrule *Tiner v. Tiner*, 2012 Ark. App. 483, 422 S.W.3d 178, and require circuit courts to "give a meaningful, party-centric explanation" for an award of attorney's fees.

Erik claims that the circuit court did not properly consider the parties' relative financial positions, and had the court done so, it would not have required him to pay Sonia's attorney's fees. The relative financial ability of each party is *a* consideration, but it is not determinative. *See Davis v. Williamson*, 359 Ark. 33, 46, 194 S.W.3d 197, 205 (2004).

9

In its findings of fact, the circuit court considered the experience and ability of Sonia's attorneys as well as the reasonableness of their fees. The court found that the litigation took extensive time and effort because both parties asserted grounds for divorce, both parties litigated the issues of custody and visitation, and there was extensive property—both separate and marital—valued at more than $1 million at issue. The court also noted that the issues were difficult to resolve "because of the circumstances, conduct, and behavior, of the parties." One of the circumstances the court noted was the distance between the parties' residences. The court also found that the parties were unable to cooperate with each other because of Erik's actions and inactions and that he had refused to follow the court's orders. Erik was found "financially able to comply" with the court's orders.

Erik does not argue on appeal the amount of the fees or hours spent by Sonia's attorneys. His only argument places sole determinative weight on the relative financial position of each party. However, our supreme court has held otherwise. *Davis*, *supra*. The circuit court considered the relevant factors set forth in *Davis*, including finding that Erik was responsible for the lack of cooperation between the parties and that Erik was financially able to comply with the court's orders. When reviewing findings of fact by a circuit court, this court uses a clearly erroneous standard. *Id*. We cannot say that the circuit court's findings were clearly erroneous or that the award of attorney's fees was an abuse of its discretion.

Also under this point, Erik asks that we overrule our decision in *Tiner*, *supra*, because it does not require circuit courts to give a detailed party-centric explanation for its decision on attorney's fees. We decline the invitation.

Affirmed in part; dismissed in part.

ABRAMSON, MURPHY, and BROWN, JJ., agree.

HARRISON, C.J., and VIRDEN, J., concur in part and dissent in part.

**BRANDON J. HARRISON, Chief Judge, concurring and dissenting**. I join the majority's reasoning and disposition on the jurisdictional point. I also join, with some reluctance and qualifications, the decision to affirm the attorney's-fee award.

I respectfully dissent, however, from the majority's decision to avoid deciding the contempt issue that Erik has raised. I would hold that Erik properly preserved the argument that the circuit court erred when it found him in contempt and jailed him for failing to meet a deadline to procure duplicate Social Security cards for his children. Erik deserves an answer to his challenge, whatever it may be.

*Contempt*. Erik properly appealed and preserved the circuit court's decision to jail him from 3 July 2019 to 8 July 2019. He was jailed because the court found him in contempt for not moving quickly enough when applying for duplicate Social Security cards for his children. The court set a deadline of ten days to apply for the replacement cards during a hearing held on 29 March 2019. But the written decree that set the enforceable deadline ("within ten (10) days of April 1, 2019") was not entered until 8 May 2019, which was after the deadline had passed. Erik argues on appeal that the court erred by sending him to jail based on a deadline that had come and gone before it became legally enforceable.

It is all very straightforward. What the majority calls an "Order of Commitment" was entered on July 3. It states:

> On this 3rd of July, 2019, the Court having found the Defendant, ERIK RYE, to be in contempt of Court: IT IS THEREFORE CONSIDERED, ORDERED, ADJUDGED AND DECREED by the Court that the said Defendant, ERIK RYE, be and hereby is remanded to

11

the custody of the Sheriff of Benton County and to be by him confined in the Benton County Jail until said Defendant, ERIK RYE, applies for duplicate Social Security cards for the parties' minor children, or until noon on July 8, 2019, whichever shall occur first.

IT IS SO ORDERED.

As the July 3 order makes plain, the court found Erik "in contempt of Court" for not applying for "duplicate Social Security cards." He was sent directly from the courtroom to the county jail, where he remained until released on or before July 8.

Here is the point of friction. To the majority, the July 3 order that "found the Defendant, ERIK RYE, to be in contempt of Court" is not a contempt order, it is merely an "Order of Commitment." That is the title of the document, true enough. Whatever one calls the July 3 order, the record trumpets the important and undisputed facts that the circuit court found Erik in contempt for apparently dragging his feet on the cards issue and sent him directly to jail from the hearing—as his lawyer could be heard in the background questioning . . . "[H]ow's he supposed to be able to make the applications to the social security office while he's in prison?" To which the court replied, "However he can[.]" The majority's focus on a title, which never does more than minor work in legal documents, does not change the material and substantive facts that the circuit court held Erik in contempt on the Social Security-cards issue and jailed him as a result.

On July 11, a second contempt order was entered. (The majority apparently believes that it is the only contempt order.) Here are the important paragraphs in the second contempt order:

> 5. That the Court next considered that portion of the Plaintiff's contempt petition regarding the Defendant's obligation to apply for duplicate social security cards for the parties' minor children, the Defendant's failure to

12

facilitate telephone visitation between the Plaintiff and the minor children while in his care and the Defendant's failure to pay rent on the Bethesda residence as ordered.

6. That the Court finds that the Defendant's testimony offered regarding his efforts to obtain a duplicate social security cards was not credible. The Court finds the Plaintiff's testimony regarding this matter to have been much more credible. Accordingly, the Court finds the Defendant is in willful and malicious contempt of this Court's Order regarding his obtaining duplicate social security cards for the minor children and his obligation to keep the Plaintiff updated regarding those efforts. The Court finds there has been a total and complete failure by the Defendant to keep the Plaintiff apprised of his claimed efforts to obtain said duplicate cards.

7. That the Court finds that the Defendant did not facilitate telephone calls as ordered and further finds his claimed defense of unclean hands to not be credible. Specifically, the Defendant testified the Plaintiff denied him telephone contact with the minor children, in support of his asserted unclean hands defense, and offered his telephone log history for May 19, 2019 (Defendant's Ex. 3) in support of his testimony but a review of that exhibit clearly reflects the Defendant received two (2) phone calls, initiated by the Plaintiff, with the minor children on that very date despite his testimony to the contrary. Accordingly, the Court finds the Defendant is in willful and malicious contempt of this Court's Order regarding his obligation to facilitate telephone communication between the Plaintiff and the minor children while in his care and custody.

8. The Court finds the Defendant was further in contempt of this Court's order regarding his obligation to pay rent on the Bethesda residence as ordered but has purged himself of that contempt by paying the rental obligation due through July 1, 2019.

9. The Court finds that the Defendant shall be incarcerated by separate Order in the Benton County Jail for his civil contempt of this Court's Order. That as additional sanction against the Defendant for such contempt the Defendant is ordered and directed to pay an attorney fee of $2,500.00 to the Plaintiff no later than 5:00 pm on October 5, 2019.

The record does not show how long Erik was in fact imprisoned; but it is clear enough that *he never went back* to jail after he was imprisoned between July 3 and July 8.[1] So there is no doubt why Erik went to jail immediately following the hearing—it was all about the cards. In a moment of both memorialization and redundancy, the court mentioned again in the July 11 order that Erik had been jailed (an event that had fully transpired when the second contempt order was entered). Then it tacked on an attorney's fee of $2500 for good measure to incentivize better telephone communication in the future.

Erik filed a timely notice of appeal from the July 11 order.[2] On appeal, he decided to concentrate his fire on what he obviously thought was the circuit court's most vulnerable ruling—that he failed to comply with the deadline related to the Social Security cards. That ruling was the target for reversal because, as I have said, the court held him in contempt for missing a deadline that had come and gone before the court entered the order setting the deadline.

There is an argument to be made there. *See, e.g.*, Ark. R. Civ. P. 58 (2020); *Exigence, LLC v. Baylark*, 2010 Ark. 306, 367 S.W.3d 550; *Hewitt v. State*, 362 Ark. 369, 208 S.W.3d 185 (2005); *Bradford v. State*, 351 Ark. 394, 94 S.W.3d 904 (2003); *Martin v. Jimenez*, 2016

---

[1]This appeal is not moot because Erik has appealed an unconditional penalty for a specific time; and the penalty (jail) was obviously imposed as the punishment for disobeying a court order. *See Conlee v. Conlee*, 370 Ark. 89, 257 S.W.3d 543 (2007); *Ward v. Ward*, 273 Ark. 198, 617 S.W.2d 364 (1981); *see also Thompson v. State*, 2016 Ark. 383, 503 S.W.3d 62.

[2]Erik also designated an order entered on July 9 in his notice of appeal; no order bears that file-mark date. There is a "Findings of Facts and Conclusions of Law" by the circuit court that was entered on July 8, in addition to the July 3 "Order of Commitment."

Ark. App. 268, 493 S.W.3d 347. *But see Almeida v. Metal Studs, Inc.*, 2017 Ark. App. 162, 516 S.W.3d 279.

My main concern today, however, is the majority's decision to avoid reaching and deciding the merit of the circuit court's decision to hold Erik in contempt on the Social-Security-cards issue. It does so although Erik argues the point in his principal brief. True, when it came time to file his principal brief, Erik chose not to pursue relief from the telephone-visitation issue that showed up in the July 11 order. But there is nothing odd, incorrect, or problematic about this tactical decision. As the appellant, Erik is the master of his appeal; he can choose what to brief and what not to brief if the two contempt issues at issue were not inextricably entwined. They are not.

Every case on which the majority relies to avoid Erik's point is distinguishable because they all imposed one indivisible sanction for multiple contemptuous behaviors. This case is different. The cards-based contempt was a specific written finding for which a particular sanction (jail) was imposed. Of course, whether a party must argue every contempt finding depends on whether the conduct at issue can truly be seen as separate events or "behaviors." But the telephone-visitation issue is easily separated from the Social-Security-cards issue because applying for duplicate cards for the children has nothing at all to do with telephone visitation. Though well-intentioned, the majority's decision to avoid Erik's argument for reversal on the contempt issue he raised pushes this court farther away from the realities of the practice of law in the circuit and appellate courts. More orders from the circuit courts will be required so that everything can be kept sufficiently "separate," assuming a party can get multiple orders on its own terms. This in turn means that lawyers

who face contempt-related issues must become hypersensitive to a degree that borders on the unrealistic. *Caveat attornatus*.

*Attorney's fees.* "We saved the best issue for last" was how Erik memorably introduced his argument on why the circuit court's decision to award Sonia more than $36,000 in attorney's fees should be reversed. I have a concern about not only the dollar amount the court awarded in this case but also that one party was made to pay the other's fee at all. That said, I am constrained by law and this record from doing more than expressing the reservation.

The circuit court ordered Erik to pay Sonia's attorney's fees in the May 8 divorce decree. Later, the court held a hearing on the fee amount, and during it, Erik testified that it was "incongruous" to him that Sonia had incurred substantially more attorney's fees in the divorce than he did. Sonia introduced bills from her attorneys as evidence and asked the court to make Erik pay them. Sonia also testified that her first attorney charged $200 an hour. Her second attorney charged $400 an hour. In a moment of candor that should have put the circuit court on high alert, Sonia agreed it was "reasonable for [her] former husband to have to pay double because [she] chose to pay double." I trust the circuit court rejected that logic (in silence) as it went about its work.

In a written order, the court directed Erik to pay $36,284.60 to Sonia no later than 5:00 pm on October 5, 2019. If he failed to do so, then he would be held in contempt and, you guessed it, jailed. Erik protested the reasonableness of the $36,000 fee *amount* in circuit court. But he does not do so here. He does not argue that $36,000+ is too much money to award for an attorney's services given this record and the *Chrisco* factors, for example.

16

Erik's only assertion on appeal is that the circuit court failed to consider that Sonia was the wealthier party. He argues that "[i]t was an abuse of discretion to order [him] pay Sonia nearly $40,000 in attorney's fees because the order does not consider her financial abilities and declined to provide a party-centric explanation for fee shifting." Specifically, Erik points out that the circuit court failed to consider that Sonia "makes 2.6x Erik's income and has 3.9x his cash reserves."

I respectfully disagree with the majority's reliance on *Davis v. Williamson*, 359 Ark. 33, 194 S.W.3d 197 (2004). *Davis* involved a paternity action (not a divorce case) in which the circuit court *denied* fees to a mother despite the famous father's wealth and ability to pay the requested six-figure fee amount. In *Davis*, the supreme court considered the traditional *Chrisco* factors and the relative "financial abilities of the parties" as it affirmed the circuit court's decision to deny the mother's motion for attorney's fees. *Id*. at 46, 194 S.W.3d at 205. More important than the specific disposition in *Davis* is that, here, the majority seems to go beyond the considerations addressed in *Davis*. The majority affirms the fee award because:

> Both parties asserted grounds for divorce.
>
> Both parties litigated custody and visitation issues.
>
> The marital and separate property involved in the divorce was valued at more than $1 million.
>
> The circumstances, conduct, and behavior of the parties made it difficult for the circuit court to resolve the litigation.
>
> The parties lived a great distance from each other.
>
> The parties were unable to cooperate with each other "because of Erik's actions and inactions."

Erik refused to follow the court's orders.

Erik had the ability to financially comply with the court's orders.

These points go beyond the disparity-of-wealth consideration and the *Chrisco* factors that the supreme court applied in *Davis*. My concern is whether a subtle but unintended expansion of *Chrisco* and *Davis* is afoot.

In any event, there is no question that a circuit court may order one party to pay the other party's attorney's fees in a divorce case. *See* Ark. Code Ann. § 9-12-309(a)(2) (Repl. 2020); *Gavin v. Gavin*, 319 Ark. 270, 890 S.W.2d 592 (1995), *overruled on other grounds by Hartford Fire Ins. Co. v. Sauer*, 358 Ark. 89, 186 S.W.3d 229 (2004). But it is not clear why a circuit court should award fees in the first place. That a particular decision can be made says little about whether it should in fact be made. The circuit court in this case obviously thought it should award fees. And Erik's challenge to the fees includes the point that this court has held that a circuit court must consider the relative financial abilities of divorcing parties when deciding whether one party should be made to pay the other party's fees.

In *Jablonski v. Jablonski*, 71 Ark. App. 33, 25 S.W.3d 433 (2000), we held that the circuit court clearly erred in awarding attorney's fees to a wife since she was clearly in a better financial position to bear the costs of the divorce litigation than the husband, who had previously been held in contempt and incarcerated. We wrote, "[I]n determining whether to award attorney's fees, the [circuit court] *must* consider the relative financial abilities of the parties." *Id*. at 41, 25 S.W.3d at 438 (emphasis added). *Jablonski* arguably conflicts with the supreme court's decisions in *Davis*, *supra*, and *Hargis v. Hargis*, 2019 Ark. 321, at 7, 587 S.W.3d 208, 212 (citing *Davis*). To say more on the possible conflict is

beyond this separate writing's scope. It suffices today to point out that regarding the "disparity" consideration, there was proof that Sonia is the stronger party financially. For example, the record contains an $812,893.10 cashier's check that identifies Sonia individually as remitter for the purchase of a home during the marriage. The record also shows a difference in the divorcing parties' income. Sonia testified that she earned $240,000. She also told the court that Erik earned $150,000 a year at his new job in the Washington, D.C., area. None of this guided the circuit court's decision as best I can tell.

The law is murky on when and how to apply the "disparity" consideration; however, the supreme court used it recently as dictum in *Hargis*: when a challenge to an attorney's-fee award is based on the disparity between the parties' incomes, that disparity, standing alone, is not a sufficient basis to reverse a fee award. 2019 Ark. 321, at 7, 587 S.W.3d at 212. Given the dictum, I cannot say with confidence that the circuit court committed a reversible error in this case just because it did not expressly account for any alleged disparity in Sonia's and Erik's respective wealth.

It is also important to me, as it is to the majority, that Erik has not attacked the reasonableness of the fee amount itself here (though he did so in circuit court). He swung toward a different fence, arguing that the court erred by making him pay any amount at all given the parties' respective wealth. Deciding the reasonableness of a fee amount is not the same as deciding whether a divorcing party is entitled to one in the first place. I take the latter point to be Erik's point. It was a tactical decision in my view, and I understand why he made it. I agree in principle with Erik that a circuit court should have to tell the parties why it is making one party pay the other party's attorney's fees in a divorce action. But that

19

view has been rejected by this court thus far. *See Folkers v. Buchy*, 2019 Ark. App. 30, at 11, 570 S.W.3d 496, 503 (Harrison, J., dissenting); *see also Tiner v. Tiner*, 2012 Ark. App. 483, at 17, 422 S.W.3d 178, 188 (Abramson, J., dissenting). The supreme court has yet to step directly into the breach and decide whether circuit courts must do more to justify large—if not potentially financially crippling—attorney's fees in this type of case. *Folkers*, 2019 Ark. App. 30, at 17, 570 S.W.3d at 505 (Hixson, J., dissenting).

Perhaps the supreme court will also one day soon revisit what is so special about this area of the law in general such that one party can so readily be made to pay another party's attorney's fees absent a contractual promise to do so. Two adults consent to be married. They are married for a time. They decide to divorce. (There are more times than not cross-complaints for divorce, which is what happened here.) The court divorces the couple. The court then decides that one party should pay the other party's attorney's fees—even when there is no finding that any lawyer engaged in vexatious litigation or some other Rule 11 violation, there has been no Rule 37-related discovery violation, the relative wealth of the divorcing parties is not expressly considered, etcetera. Why does this rather usual situation warrant one party having to pay the other party's attorney's fees? I see no clearly expressed reason or justification in the caselaw or the statute that answers this question.

★ ★ ★

The finding of contempt in the order dated 3 July 2019 (and its redundant memorialization on July 11) relating to Erik's procurement of duplicate Social Security cards was preserved for a decision on its merit. Because the majority's opinion avoids deciding this important issue, I respectfully dissent.

I join the entirety of the majority's decision on the jurisdictional point, and subject to the reservations stated, I join the decision to affirm the attorney's-fee award to Sonia.

VIRDEN, J., joins.

*Kezhaya Law PLC*, by: *Matthew A. Kezhaya*; and *The Vernetti Group, PLLC*, by: *Bryan S. Vernetti*, for appellant.

*Cullen & Co., PLLC*, by: *Tim Cullen*, for appellee.