

# ARKANSAS COURT OF APPEALS

DIVISIONS I, II, III
No. CV-16-414

| | |
|---|---|
| | Opinion Delivered: March 15, 2017 |
| CHRISTOPHER CHAD POLAND | APPEAL FROM THE PULASKI COUNTY CIRCUIT COURT, THIRTEENTH DIVISION [NO. 60DR-15-5302] |
| APPELLANT | |
| V. | |
| | HONORABLE W. MICHAEL REIF, JUDGE |
| MEREDITH POLAND | |
| APPELLEE | AFFIRMED; MOTION DENIED |

## KENNETH S. HIXSON, Judge

Appellant Christopher Chad Poland (Chad) appeals from an order of protection that prohibited him from contacting his wife and limited his contact with his daughter for a period of one year. Chad's wife is appellee Meredith Poland (Meredith), to whom he has been married for fourteen years. The parties have one ten-year-old daughter. Chad's only argument on appeal is that there was insufficient evidence to support the order of protection because there was a lack of evidence that he committed domestic abuse against either his wife or his daughter. We affirm.

When a petition for a protective order is filed under the Domestic Abuse Act, the trial court may provide relief to the petitioner upon a finding of domestic abuse. Ark. Code Ann. § 9-15-205(a) (Repl. 2015). Pursuant to Arkansas Code Annotated section 9-15-103(3)(A), "domestic abuse" is defined as "[p]hysical harm, bodily injury, assault, or the

infliction of fear of imminent physical harm, bodily injury, or assault between family or household members."

Our standard of review following a bench trial is whether the trial court's findings are clearly erroneous. *Simmons v. Dixon*, 96 Ark. App. 260, 240 S.W.3d 608 (2006). A finding is clearly erroneous when, although there is evidence to support it, the reviewing court on the entire evidence is left with a definite and firm conviction that a mistake has been committed. *Id.* Disputed facts and determinations of credibility are within the province of the factfinder. *Id.*

This case was initiated by Meredith against Chad on December 30, 2015, when she filed a petition and affidavit for an order of protection. Meredith's affidavit alleged that beginning in September 2015 the parties' marriage had become tumultuous, with Chad frequently yelling at her and berating her. Meredith documented several confrontations brought on by Chad, which culminated on December 11, 2015. During this confrontation, Chad yelled and screamed at Meredith, and she and her daughter wanted to leave. After Meredith went outside to make a phone call, Chad locked her out of the house. Meredith called the police. When the police arrived, they arranged for Meredith and the daughter to leave the home.

Based on these allegations, the trial court entered an ex parte temporary order of protection against Chad on December 30, 2015, temporarily prohibiting him from contacting Meredith or his daughter. A final hearing was held on January 13, 2016.

On January 13, 2016, the trial court entered a final order of protection, effective for one year. By this time, Meredith and her daughter were living in the family home, and

2

SLIP OPINION

Chad had moved out and was living with his parents. In the final order, the trial court found that Meredith and the daughter were in immediate and present danger of domestic abuse. Chad was prohibited from contacting Meredith, and he was excluded from her residence and place of employment. Chad was also restricted from contacting his daughter, with the exception of reasonable phone and text contact, along with supervised visitation every other weekend to be supervised by Chad's parents.

At the final hearing, Meredith stated that the parties' marriage had become intolerable and that they were going through a divorce. Meredith testified about numerous incidents where Chad had berated, physically assaulted, and threatened her. According to Meredith, Chad had hit her legs while she was in bed, which caused bruising. Meredith also testified that Chad owned two guns, which were usually within his reach, and that she was afraid of him. She said that on several occasions Chad waved a gun at her. This happened twice between September and December of 2015. This would happen during his screaming episodes, and Meredith testified that, on one occasion, Chad said that maybe he would just go ahead and shoot everybody. According to Meredith, there were also times when he would raise his fist at her. She further stated that, "as for my daughter, he has threatened to whip her ass."

Vicki Garcia, one of the parties' neighbors, testified on behalf of Meredith. Vicki stated that during the latter months of the parties' marriage she witnessed unsettling arguments where Chad would scream at Meredith and berate her. Vicki had twice called the police to report disturbances, and she expressed concern for the safety of both Meredith and the parties' daughter.

3

Chad testified on his own behalf, and he acknowledged a difficult marriage over the past few months after he suspected that Meredith had been cheating on him. He acknowledged saying a "few choice words" to Meredith, but he denied ever threatening, berating, or abusing her. He indicated that Meredith's allegations were all fabricated and that she had no reason to be afraid of him.

In this appeal, Chad argues that the order of protection should be reversed because there was insufficient evidence that he committed domestic abuse as defined in the Domestic Abuse Act. He contends that he did not assault or cause bodily injury to anyone, nor did he inflict imminent fear of physical harm or bodily injury. Although he may have been verbally aggressive and controlling at times, Chad posits that this was insufficient to sustain a protective order where there was an absence of any physical violence or threats of violence. Chad asserts that Meredith was being untruthful and used the domestic-abuse proceedings as leverage to obtain possession of the parties' house and limit his contact with his daughter. Chad also contends that, even were we to conclude that he committed domestic abuse against his wife, there was no evidence that he committed domestic abuse against his daughter and that, at a minimum, we should reverse the protective order as it pertains to his daughter.

I.    *Mootness*

As a threshold matter, we must determine whether the issue before us is moot. Although the issue of mootness has not been raised by the parties, it is an issue that we raise on our own motion. *Scoggins v. Medlock*, 2010 Ark. App. 401. Generally, a case becomes moot when any judgment rendered would have no practical effect upon a then-existing

legal controversy.  *Davis v. Brushy Island Pub. Water Auth.*, 375 Ark. 249, 290 S.W.3d 16 (2008).

In this case the dissenting judges, relying on *Gee v. Harris*, 94 Ark. App. 32, 223 S.W.3d 88 (2006), would dismiss this appeal as moot because, by the time the case was submitted to our court, the one-year order of protection had expired.  We, however, hold that the appeal is not moot because of the collateral consequences that attend a finding of domestic abuse.  In *Newton v. Tidd*, 94 Ark. App. 368, 231 S.W.3d 84 (2006), our court perceptively observed that although the issuance of an order of protection is not a criminal matter, "criminal or not, there is and should be a degree of opprobrium attached to a finding that a person has committed acts of domestic abuse."

In *Gee v. Harris*, *supra*, the term of the order of protection being appealed had expired shortly before the case was submitted to our court.  In dismissing that appeal, we wrote:

> A case becomes moot if a controversy ceases to exist between the parties at any stage of the legal proceedings, including the appeal.  As a general rule, the appellate courts of this state will not review issues that are moot.  To do so would be to render advisory opinions, which we will not do.  Generally, a case becomes moot when any judgment rendered would have no practical legal effect upon a then-existing legal controversy.  *Our courts have recognized two exceptions to the mootness doctrine.  The first exception involves issues that are capable of repetition, yet evade review, and the second exception concerns issues that raise considerations of substantial public interest, which if addressed would prevent future litigation.*
>
> As far as the underlying order of protection that is being appealed, neither exception is applicable.  The order has expired and thus there is no remedy for Gee— even if we held that the trial court erred—because the damage, if there was any, has already been done and cannot be undone.  Because any judgment rendered would have no practical legal effect upon an existing legal controversy, we dismiss Gee's appeal as moot.

*Gee v. Harris*, 94 Ark. App. at 33−34, 223 S.W.3d at 88−89 (emphasis added) (citations omitted).

However, six years after *Gee v. Harris* was decided, we introduced a third commonly held exception to mootness—"collateral consequences"—in the context of a felony criminal case where the sentence was served before the appeal was submitted.  In *McPeak v. State*, 2012 Ark. App. 234, at 1−2, 406 S.W.3d 430, 432, we wrote:

> McPeak asserts that despite his completing the confinement portion of his sentence, his case is not moot for appellate review because of *the collateral consequences* that attend a felony conviction.  *The State concedes the point, and we agree.  See Pennsylvania v. Mimms*, 434 U.S. 106, 108 n. 3, 98 S.Ct. 330, 54 L.Ed.2d 331 (1977) (citing prior United States Supreme Court cases holding "that the possibility of a criminal defendant's suffering '*collateral legal consequences*' from a sentence already served permits him to have his claims reviewed here on the merits"); *Ginsberg v. State of N.Y.*, 390 U.S. 629, 633 n. 2, 88 S.Ct. 1274, 20 L.Ed.2d 195 (1968) (noting that "*St. Pierre* [v. *United States*, 319 U.S. 41, 43, 63 S.Ct. 910, 87 L.Ed. 1199 (1943)] also recognized that the case would not have been moot had 'petitioner shown that under either state or federal law further penalties or disabilities can be imposed on him as result of the judgment which has now been satisfied'").

(emphasis added).  Hence, it is clear that in the context of a felony conviction, by simply serving the sentence, the defendant's appeal is not rendered moot on the underlying conviction.

Similarly, in the context of a misdemeanor conviction and criminal contempt, our supreme court recently held in a plurality opinion, *Thompson v. State*, 2016 Ark. 383, 503 S.W.3d 62, that the mootness doctrine does not bar a direct appeal from a misdemeanor conviction even when the appellant had already served his sentence.  The supreme court noted in that case that a person convicted of a misdemeanor has the right to appeal pursuant

to Rule 1(a) of the Arkansas Rules of Appellate Procedure−Criminal, and that under Rule 1(c) that right is not extinguished even upon the death of the appellant. [1] [2]

Although there is a split of authority among other states as to whether an appeal from an expired order of protection is moot, the Connecticut Supreme Court indicated in *Putman v. Kennedy*, 279 Conn. 162 (2006), that the majority of states that have considered the issue have concluded that appeals from domestic-violence restraining orders are not rendered moot by their expiration. In *Putman*, the court concluded that it was reasonably possible that adverse collateral consequences of the domestic-violence restraining order may occur and, therefore, that the appeal was not rendered moot by virtue of the expiration of the order during the pendency of the appeal.

The Arizona appellate courts are in step with Connecticut, holding that because expired orders of protection carry with them significant collateral legal and reputational consequences, they are not moot for purposes of appellate review. *See Cardoso v. Soldo*, 230 Ariz. 614 (2012). Further, C.J.S. provides that, although under some court holdings an appeal from a domestic-abuse protection order is rendered moot by its expiration, under other authority, an appeal from an expired order is not moot when it is reasonably possible that there will be significant prejudicial collateral consequences for the person subject to the

---

[1] A final order of protection is appealable pursuant to Rule 2(a)(1) of the Arkansas Rules of Appellate Procedure−Civil.

[2] *Thompson v. State* was a 3−2−2 decision by the supreme court. Three justices held that the issue was not moot just because the defendant had completed his sentence prior to submission; two justices concurred and found that the case was not moot due to other exceptions of the mootness doctrine; and two justices dissented, stating that the case was moot because the sentence had been served. Hence, five justices held that the case was not moot.

order, including harm to the reputation and legal record of the defendant, stigma, the

possibility that the petitioner might again petition for relief from domestic violence, and the

possible considerations of such an order by a court as a factor in making a future custody

determination. 28 C.J.S. *Domestic Abuse and Violence* § 34 (2017).

In Arkansas, expired orders of protection may have ongoing collateral legal

consequences. Arkansas Code Annotated section 9–15–201(e)(1)(C) provides that a petition

for relief under the Domestic Abuse Act shall disclose "any prior filings of a petition for an

order of protection under this chapter." Thus, the issuance of a prior, albeit expired, order

of protection is a circumstance a court is entitled to consider in deciding whether to issue a

subsequent order of protection. An order of protection, even if expired, also has ongoing

significance in a child–custody dispute. Arkansas Code Annotated section 9–13–101(c)

provides:

(1)  If a party to an action concerning custody of or a right to visitation with a child
has committed an act of domestic violence against the party making the
allegation or a family or household member of either party and such allegations
are proven by a preponderance of the evidence, the circuit court must consider
the effect of such domestic violence upon the best interest of the child, whether
or not the child was physically injured or personally witnessed the abuse,
together with such facts and circumstances as the circuit court deems relevant in
making a direction pursuant to this section.

(2)  There is a rebuttable presumption that it is not in the best interest of the child
to be placed in the custody of an abusive parent in cases in which there is a
finding by a preponderance of the evidence that the parent has engaged in a
pattern of domestic abuse.

This is particularly relevant in the present case because the parties were going through

divorce proceedings at the time the protective order was issued, making the issues of child

custody and visitation likely to arise. In addition to substantive legal collateral consequences

of an expired order of protection, there are other negative consequences, including the

potential adverse effect on an employment application, dissemination of the information to governmental and police agencies, harm to the defendant's reputation, and the stigma and opprobrium associated with domestic abuse.

As set forth above, there may be collateral consequences of a protective order entered under the Domestic Abuse Act that remain after the expiration of the protective order. For that reason, we are adding the collateral-consequences exception as a third exception to the two other exceptions to the mootness doctrine noted in *Gee v. Harris*[3] without the necessity of overruling *Gee*. The issue of mootness must be decided in each case based on its facts. Therefore, even though the term of the protective order in this case has expired, the appeal is not moot herein because we hold there are collateral consequences associated with the order of protection.

## II. *Sufficiency of the Evidence*

Having established that this appeal is properly before this court, we now turn to Chad's argument that there was insufficient evidence that he committed domestic abuse against his wife or his daughter. Under Arkansas Code Annotated section 9-15-103(3)(A), there must be evidence that Chad caused physical harm, bodily injury, or assault, or the infliction of fear of imminent physical harm. With regard to Meredith, there was testimony that he had hit her legs and caused bruising, which amounts to physical harm. As to both Meredith and the parties' daughter there was testimony elicited in support of the "infliction of fear of imminent physical harm" component of domestic abuse. Although Chad denied

---

[3]The first exception involves issues that are capable of repetition, yet evade review, and the second exception concerns issues that raise considerations of substantial public interest, which if addressed would prevent future litigation. *See Gee*, *supra*.

each of Meredith's allegations in his testimony, the trial court specifically found that Chad was not credible.  Meredith testified that Chad always had his gun near him, that he waved his gun at her on numerous occasions, and that during one screaming episode he waved his gun and stated that maybe he would just go ahead and shoot everybody.  There was also evidence that Chad had at times screamed at his daughter and threatened to "whip her ass." Moreover, the parties' daughter was present during many of the confrontations instigated by Chad against Meredith, causing their daughter to be apprehensive about her father as evidenced by her effort to record one of the disturbances and actually telephoning her grandmother during the confrontation.  Further, the daughter indicated that she wanted to leave with her mother after the police got involved on the last day they were with him. Leaving credibility decisions to the trial court, as we must, we are not left with a definite and firm conviction that the trial court erred in finding domestic abuse and entering the protective order restricting Chad's contact with his wife and his daughter.  Therefore, the order of protection is affirmed.[4]

### III.    *Appellee's Motion for Costs Incurred to Supplement Appellant's Addendum and Abstract*

Finally, we address Meredith's motion for attorney's fees and costs associated with her supplemental abstract and addendum, which was submitted with this case.  Under Supreme Court Rule 4–2(b)(1), we have the authority to make such an award to compensate the appellee for its supplementation if we determine that the appellant's abstract and

---

[4]Because the dissenting judges would dismiss the appeal as moot, the dissenting judges did not vote on the merits of whether the trial court's finding of domestic abuse was clearly erroneous.

SLIP OPINION

addendum are deficient. However, we have concluded that Chad's abstract and addendum were sufficient for our review of the case, and that the supplemental materials provided by Meredith were not necessary. Therefore, the motion for costs is denied.

Affirmed; motion denied.

GRUBER, C.J., and VIRDEN, HARRISON, and GLOVER, JJ., agree.

GLADWIN, WHITEAKER, VAUGHT, and BROWN, JJ., dissent.

**LARRY D. VAUGHT, Judge, dissenting.** I dissent from the majority's departure from precedent and its expansion of a previously narrow exception to the mootness doctrine. The issue before us is whether Chad's appeal is moot based on the expiration of the order of protection he is appealing. In *Gee v. Harris*, 94 Ark. App. 32, 223 S.W.3d 88 (2006), we held that although the issue of mootness had not been raised by either party, we lacked jurisdiction to review an order of protection that had expired, making the case moot. We specifically held that an expired order of protection did not meet the requirements of the two recognized exceptions to the mootness doctrine. As was the case in *Gee*, the order of protection against Chad has now expired, so there is no remedy available for him on appeal. Even if we found error and decided the case in Chad's favor, "the damage, if there was any, has already been done and cannot be undone." *Gee*, 94 Ark. App. at 33, 223 S.W.3d at 89. Therefore, because any judgment we might render would have no practical legal effect on an existing legal controversy, we are required to dismiss Chad's appeal as moot.

The majority holds that our precedent in *Gee* must be revised to incorporate a third exception to the mootness doctrine, the theory of "collateral legal consequences." Such an

SLIP OPINION

exception has been recognized under Arkansas law in only one case,[1] *McPeak v. State*, 2012 Ark. App. 234, 406 S.W.3d 438, which dealt with a felony conviction, not a civil order of protection. Neither our court nor the Arkansas Supreme Court has applied this exception in any other case. The majority's application of the collateral-legal-consequences exception to the facts of the present case is a significant departure from precedent, weakens the mootness doctrine, and undermines the prohibition on advisory opinions.

As the Arkansas Supreme Court explained in *Chamberlin v. State Farm Mutual Automobile Insurance Co.*, 343 Ark. 392, 397–98, 36 S.W.3d 281, 284 (2001), "[u]nder the doctrine of *stare decisis*, we are bound to follow prior case law." The policy of stare decisis is designed to lend predictability and stability to the law. *Id.*, 36 S.W.3d at 284; *State of Ark. Office of Child Support Enf't v. Mitchell*, 330 Ark. 338, 343, 954 S.W.2d 907, 909 (1997); *Parish v. Pitts*, 244 Ark. 1239, 1252, 429 S.W.2d 45, 52 (1968) (superseded by statute on other grounds). It is well settled that "[p]recedent governs until it gives a result so patently wrong, so manifestly unjust, that a break becomes unavoidable." *Chamberlin*, 343 Ark. at 397–98, 36 S.W.3d at 284 (quoting *Mitchell*, 330 Ark. at 343, 954 S.W.2d at 909). Our test is whether adherence to the rule would result in "great injury or injustice." *Id.*, 36 S.W.3d at 284; *Mitchell*, 330 Ark. at 343, 954 S.W.2d at 909 (quoting *Indep. Fed. Bank v. Paine Webber*, 302 Ark. 324, 331, 789 S.W.2d 725, 730 (1990)). I am not persuaded that the long-standing rule that an appeal of an order of protection is rendered moot by the order's expiration will now suddenly result in "great injury or injustice."

---

[1]The only other case on which the majority relies, *Thompson v. State*, 2016 Ark. 383, 503 S.W. 3d 62, was a plurality decision that neither expressly nor impliedly invoked the collateral–legal–consequences exception.

The majority relies heavily on cases from other jurisdictions that allow appeals from expired orders of protection based on the theory of collateral legal consequences. However, the majority fails to discuss the fact that many of those jurisdictions require a special proceeding wherein the defendant must prove, through the introduction of admissible evidence, the alleged collateral legal consequences in order to invoke the exception. *See Putman v. Kennedy*, 900 A.2d 1256 (Conn. 2006). Arkansas has no such procedure, and as a result, the majority applied the collateral-legal-consequences exception in this case without any substantive evidence of the specific consequences facing Chad as a result of the order of protection. The majority argues that Chad may be at a disadvantage in future child-custody disputes or order-of-protection cases by virtue of the order at issue in this appeal, but this is mere speculation. Chad has neither argued nor presented evidence regarding either potentiality.

Ultimately, the majority's opinion rests on its conclusion that an order of protection causes harm to its subject's reputation due to the "stigma and opprobrium associated with domestic abuse." While that conclusion may be correct, it does not support a drastic departure from the mootness doctrine. The majority fails to distinguish the reputational harm associated with an order of protection from the reputational harm associated with any other negative court ruling. By expanding the collateral-legal-consequences exception to the mootness doctrine to cover a civil case in which we have no substantive evidence of concrete consequences, the majority has created the precedent that mootness may be overcome based on something as vague and amorphous as "social stigma" and "harm to the reputation." This will become the exception that swallows the rule. Our holding in *McPeak* was limited to the

well-established legal consequences of a felony conviction. The majority's expansion of that exception to cover this case undermines the mootness doctrine and will likely result in our courts issuing prohibited advisory opinions. *See Shipp v. Franklin*, 370 Ark. 262, 266–67, 258 S.W.3d 744, 748 (2007).

GLADWIN, WHITEAKER, and BROWN, JJ., join.

*Worsham Law Firm, P.A.*, by: *Richard E. Worsham*, for appellant.

*Gill Ragon Owen, P.A.*, by: *Sharon Elizabeth Echols* and *Christopher L. Travis*, for appellee.