Cite as 2022 Ark. App. 493

# ARKANSAS COURT OF APPEALS

DIVISION III

No. CV-22-29

| | | |
|---|---|---|
| | | **Opinion Delivered** November 30, 2022 |
| JEFFERY PARSONS | | |
| | APPELLANT | APPEAL FROM THE SALINE COUNTY CIRCUIT COURT |
| | | [NO. 63DR-20-942] |
| V. | | |
| | | HONORABLE ELLEN B. BRANTLEY, JUDGE |
| CHRISTINA PARSONS | | |
| | APPELLEE | |
| | | AFFIRMED |

## WAYMOND M. BROWN, Judge

In this one-brief appeal, appellant Jeffery Parsons appeals the Saline County Circuit Court's order entered on October 5, 2021, granting appellee Christina Parsons's petition for a final order of protection against him. On appeal, Jeffery asserts various hearing-related errors, and he argues there was insufficient evidence to support a domestic-abuse finding and the issuance of the order of protection. We affirm.

This case began on October 23, 2020, when Christina filed a petition and affidavit for an order of protection. In her affidavit, Christina alleged several incidents of domestic abuse that included both physical violence and threats. She alleged that Jeffery hit her, broke items in their home, and threatened to "kill [her] parents and come over there with a box cutter, bust open the door, cut [her] abdomen open with the box cutter and shove [her] guts in [her] mouth" if she refused to have an abortion. She further stated in her affidavit, "I want this order because I am afraid of Jeff and what he will do to me since he is a Benton police officer. I was afraid the police would not help

since Jeff had worked at the department so long and was friends [with] the other officers. Today he has already called me 15 times since my interview [with Captain] Haworth. Today, I'm afraid he will know that I'm at my parents and what he will do to me and my parents."

In light of these allegations, the circuit court entered an ex parte temporary order of protection against Jeffery on October 26, 2020, prohibiting him from contacting Christina.

A hearing on the final order of protection was held on October 1, 2021. Christina testified that she disclosed to Captain Haworth with the Benton Police Department details of abuse endured during her marriage to Jeffery. She stated that after Jeffery had found out she spoke to Captain Haworth about what was going on, she sought a protective order because, on the basis of their history, "[she] didn't know what he would do to [her]."

Christina testified about the following incident that occurred on August 6, 2017: "[Jeffery] was drunk and he hit me repeatedly where it busted the back of my ear open. And it gave me a black eye. And I ended up getting Bell's palsy from it." She elaborated that shortly thereafter, on August 10, "I went to the doctor because I was having facial weakness on the left side of my face. I couldn't raise my eyebrows. I couldn't smile. I couldn't move that side of my face." Christina testified that she took photos of the injuries and emailed them to herself; however, she testified that Jeffery deleted the emails.

Christina stated that in February 2020, during an argument, Jeffery came up behind her and put her in a chokehold when she tried to leave. Christina also stated that when she found out she was pregnant in March, Jeffery tried to force her to have an abortion. Christina testified that on March 14, "he told me that he would kill my parents if I didn't have the abortion and that he would come over there and kick the door down, cut my abdomen open with a box cutter and shove my guts in

2

my mouth." Christina further stated that in early April there was another incident. She explained, "[H]e cornered me in the closet and he hit me repeatedly causing knots on my head. And I ended up having a concussion from it. I didn't go to a doctor for it, but I know the signs of a concussion. I was vomiting. I couldn't sit up straight. I couldn't walk straight. I ended up having to call off work for a couple of days afterwards." Christina testified that these were the incidents she described to Captain Haworth. She feared that after disclosing these events, she thought Jeffery would kill her.

A log of text messages was presented showing Jeffery was upset because he thought Christina turned her cell-phone location services off. She stated that he had to know her whereabouts at all times, and she was not allowed to disable the location services. Jeffery objected; however, the court sustained the objection, stating, "Well, I have to say, I consider wanting to keep tabs on somebody part of a pattern of domestic abuse. Or it can be. I will not sustain that objection. It's overruled." Christina further stated she insisted to Jeffery that she did not turn her location services off, to which Jeffery responded, "Yeah, bull-fucking shit." She stated that she always had to respond to his messages and had to call him every day at noon on her lunch break. If she failed to do so, he would "go days without talking to [her]." She stated that she was "afraid to work late because [she] knew what would happen."

Christina testified that, at the time of the hearing, there were pending criminal charges against Jeffery for "domestic battery, terroristic threatening, interference with emergency communications. And there's another one. I can't –– I don't remember exactly what it is." Jeffery stipulated that there was a criminal no-contact order in effect in the pending criminal case that prohibited him from contacting Christina.

Christina testified that Jeffery had previously violently retaliated against her for things he did not like, and when she filed for the order of protection, she felt that further retaliation was imminent. She testified, "He always told me that -- because I had threatened to call the police on him before, and he told me they wouldn't do anything because of his position there and they were friends with him. And I believed him."

Christina stated that since filing the petition for the order of protection, she has had issues with Jeffery driving by her house, and he tried to "follow" her on Pinterest, a social media platform. She stated that she "had to buy cameras and everything for the house." Christina also testified that she had to start therapy and was diagnosed with PTSD and prescribed medication because of the situation with Jeffery.

Jeffery moved to dismiss the petition, arguing that Christina failed to make a prima facie case for the order of protection. The circuit court denied the motion.

On cross-examination Christina acknowledged that she had no text messages of direct threats or pictures of injuries caused by Jeffery nor did she provide witnesses that could corroborate any injuries. She stated that he "had a history of deleting all [her] stuff."

On his own behalf, Jeffery testified that he and Christina had arguments but had a "normal relationship." He denied hitting her, giving her Bell's palsy, breaking the TV, or threatening her. Jeffery also denied driving by Christina's house and claimed that he only passed nearby because she lived off of a main street in the city and he also lives in that direction. He stated that the allegations of domestic abuse began after Christina found out he was having an extramarital affair. Jeffery admitted that he is subject to a criminal no-contact order but has not been arrested for violating that order or the temporary order of protection that had been in place for almost a year.

4

Following the hearing, the circuit court entered a final order of protection prohibiting Jeffery from contacting Christina for a period of one year. Jeffery appealed.

As a threshold matter, we first briefly address the issue of mootness. Generally, a case becomes moot when any judgment rendered would have no practical effect upon a then-existing legal controversy.[1] Here, the one-year final order of protection was entered on October 1, 2021, and expired on September 30, 2022; however, pursuant to our holding in *Poland v. Poland*,[2] Jeffery's appeal of the expired final order of protection is not moot due to the adverse collateral-consequences exception that attend a finding of domestic abuse.

At the outset, Jeffery objected to the order-of-protection proceedings being held via a Zoom hearing. He contends the circuit court failed to follow the mandate of our supreme court and "erroneously employed judicial discretion in refusing to grant [him] an in-person hearing for the Order of Protection violating his rights as afforded to him by the Supreme Court of Arkansas."

On March 11, 2020, the governor of Arkansas issued an executive order declaring a state of emergency in an effort to reduce the spread of COVID-19. The per curiam released by our supreme court on June 10, 2021,[3] announcing its newest protocols to help protect the public in response to the COVID-19 global pandemic, which was in effect at the October 1, 2021 hearing, provided the following:

> On November 20, 2020, in response to the COVID-19 pandemic, we implemented certain protocols to maintain the safety of jurors, litigants, attorneys, court personnel, and the public. *See In re Response to the COVID-19 Pandemic*, 2020 Ark. 384 (per curiam). Among those protocols was the following:

---

[1]*Davis v. Brushy Island Pub. Water Auth.*, 375 Ark. 249, 290 S.W.3d 16 (2008).

[2]2017 Ark. App. 178, 518 S.W.3d 98.

[3]*See In re Response to COVID-19 Pandemic—Return to Regular Standards for Remote Ct. Participation and Reopening of the Justice Bldg.*, 2021 Ark. 135 (per curiam).

If any attorney, party, witness, or a member of their immediate family or household, has an underlying medical condition that places them at higher risk for contracting COVID-19, they may choose to participate remotely, preferably by videoconference, in a court proceeding, and no further explanation shall be required. If the proceeding cannot be held remotely, a continuance shall be granted.

*Id.* at 3. Our Committee on Civil Practice recommends that we abandon this protocol concerning requests for remote participation, and we find that it is no longer necessary in light of the continued downward trend in COVID-19 infection rates. Therefore, effective immediately, requests for remote participation shall be resolved through a return to the case-by-case exercise of judicial discretion under the applicable standards such as those set forth in Arkansas Rule of Civil Procedure 43(a).

Jeffery argues that the judicial discretion provided for in the aforementioned per curiam applied only to requests for remote hearings and not, as here, when "a remote attendance participant requests to proceed in person" instead. Because he failed to preserve the issue for our review, we do not reach the merit of his argument.

At the hearing before the circuit court, Jeffery stated,

– – we requested the order of protection part of this, at a minimum, be held in person. I believe the per curiam states that.

So at this point in time I am not asking to continue the order of protection because it's been out there for a year under temporary status, but I believe that due to issues with, you know, his civil liberties – – you know, being able to confront his accuser, his ability to adequately cross examine them, because credibility is going to be a major issue, and the per curiam opinion, we would have requested that this order of protection part be in person.

Since Jeffery failed to request a continuance for the purpose of holding the hearing in person and instead expressly agreed to proceeding via Zoom due to the extended time period the temporary protection order had been in place, we find he waived the issue for appeal. Appellant cannot fail to request a remedy below and then claim error on appeal.

Jeffery next argues that the circuit court erred in denying him the opportunity to question Christina using her own medical records. On cross-examination, concerning her Bell's-palsy

6

diagnosis, Jeffery attempted to impeach Christina with her medical records. On appeal, he argues that her medical records point to alternate potential causes of the Bell's palsy—family history of hypertension or a possible tubing accident—other than domestic abuse. Christina's counsel objected to the use of the medical documents because they were not authenticated by "someone from the hospital or a medical person." The circuit court agreed and prohibited questions pertaining to Christina's medical records.

We will not reverse a circuit court's ruling on the admission of evidence absent an abuse of discretion.[4] Nor will we reverse absent a showing of prejudice.[5] A circuit court has wide discretion in evidentiary determinations.[6]

When challenging the exclusion of evidence, a party must make a proffer of the excluded evidence at trial so that the appellate court can review the decision, unless the substance of the evidence is apparent from the context.[7] Here, Jeffery neglected to proffer any testimony by Christina to the circuit court. From the record, we cannot determine what notations her medical records contained. Without such, we have no way of determining whether Jeffery sustained prejudice.

For his next point on appeal, Jeffery argues that the circuit court erred in denying him the opportunity to refresh Christina's recollection. Jeffery contends that on cross-examination, in an effort to point out a discrepancy in Christina's testimony as to the timeline of events, he attempted to refresh Christina's recollection using the transcript of her interview with Captain Haworth.

---

[4]*Sera v. State*, 341 Ark. 415, 17 S.W.3d 61 (2000).

[5]*Id.*

[6]*Davis v. State*, 350 Ark. 22, 86 S.W.3d 872 (2002).
[7]*Riley v. State*, 2012 Ark. 462.

Christina's counsel objected to the use of the transcript because it had not been certified, and Captain Haworth was not available to authenticate the transcript. The circuit court prohibited use of the transcript, stating, "If you have someone there who can authenticate it, that would be a different matter. But you don't." Jeffery was then instructed to "move on."

Again, Jeffery failed to proffer the evidence that he sought to have admitted. A proffer "permits the trial judge to make an informed evidentiary ruling" and "create[s] a clear record that an appellate court can review to determine whether there was reversible error in excluding the [evidence]."[8] A review of the record reveals that Jeffery failed to apprise the circuit court of the relevance of the transcript. Absent a proffer, we are unable to determine whether prejudice resulted from the exclusion of the evidence.

Last, Jeffery argues that there was insufficient evidence that he committed domestic abuse against Christina.

The standard of review after an order of protection is granted is whether the circuit court's findings are clearly erroneous.[9] A finding is clearly erroneous when, although there is evidence to support it, the reviewing court on the entire evidence is left with a definite and firm conviction that a mistake has been committed.[10] Disputed facts and determinations of the credibility of the witnesses are within the province of the fact-finder.[11]

---

[8] *Sharp v. State*, 2018 Ark. 274, 555 S.W.3d 878.
[9] *Poland v. Poland*, 2017 Ark. App. 178, 518 S.W.3d 98 (2017).

[10] *Id.*

[11] *Bohannon v. Robinson*, 2014 Ark. 458, 447 S.W.3d 585.

At a hearing on a petition filed under the Domestic Abuse Act, upon a finding of domestic abuse, the circuit court may provide relief to the petitioner.[12] Domestic abuse is defined as physical harm, bodily injury, assault, or the infliction of fear of imminent physical harm, bodily injury, or assault between family or household members.[13]

Jeffery argues that the circuit court failed to "establish a finding of domestic abuse or include in its ruling any semblance of a reason that fits the statutory requirements for an order of protection to be granted." He contends that Christina's claims of physical harm and injury lacked sufficient proof and corroboration and that the circuit court granted the protection order "simply because [Christina] appeared to be scared of [Jeffery]." Jeffery does not deny that Christina testified to incidents that would constitute domestic abuse. Instead, he argues that the incidents did not occur and that her claims required "additional proof or corroboration." He argues the "burden does not lie on [Jeffery] to prove these things that [Christina] claimed did not happen. The burden falls on [Christina] to prove that they did happen and that she was a truthful witness."

Christina testified at the hearing to multiple incidents resulting in physical injury. She stated that Jeffery hit her and caused her to have a black eye and busted ear. She also described an incident in the closet when Jeffery repeatedly hit her, causing knots on her head. Christina further detailed Jeffery's threats to kill her and her parents if she refused to have an abortion. Jeffery's denial that these things occurred does not amount to a lack of evidence of domestic abuse. The circuit court heard two vastly different versions of events, after which it granted the order of protection, finding that Christina provided "pretty detailed" testimony in terms of the various incidents she alleged and

---

[12]Ark. Code Ann. § 9-15-205(a) (Repl. 2020).

[13]Ark. Code Ann. § 9-15-103(4)(A) (Repl. 2020).

observing her "to be actively frightened of [Jeffery]."  Although Jeffery would have us find his version of events believable, the credibility of witnesses is within the province of the fact-finder, and we cannot say that the circuit court's findings were clearly erroneous in light of the testimony presented at the hearing below.

Accordingly, we affirm the order of protection entered against Jeffery.

Affirmed.

KLAPPENBACH and GRUBER, JJ., agree.

*Digby Law Firm*, by: *Bobby R. Digby II*, for appellant.

One brief only.