Cite as 2023 Ark. App. 399

# ARKANSAS COURT OF APPEALS

DIVISION I
**No.** CV-22-312

|  |  |  |
|---|---|---|
| | | **Opinion Delivered** September 27, 2023 |
| ERIC SHARBINO | | APPEAL FROM THE SHARP |
| | APPELLANT | COUNTY CIRCUIT COURT |
| | | [NO. 68CV-21-126] |
| V. | | |
| | | HONORABLE ADAM G. WEEKS, |
| JENNIFER GRAHAM | | JUDGE |
| | APPELLEE | |
| | | AFFIRMED |

## BRANDON J. HARRISON, Chief Judge

Eric Sharbino appeals the order of protection entered by the Sharp County Circuit Court. He argues that the circuit court erred in finding that the corporal punishment he administered to his child—whipping him with a belt while on a fishing trip—was neither reasonable nor moderate and that the corporal punishment met the definition of domestic abuse. We affirm the circuit court's order.

Sharbino and Jennifer Graham share joint custody of their son, MC (born 11 December 2014). On 12 May 2021, Graham petitioned for an order of protection for MC and herself after Sharbino whipped MC with a belt. The petition described the events this way:

> The father Eric Sharbino took the son [MC] fishing. [MC] was asked multiple times to put minnows back in the water. He did not. So he was whooped with a belt. The father then waited for [MC] to quit crying then asked why he didn't listen when [he] stated he didn't know he was whipped again.

Graham described "severe bruising across both his left and right butt cheek. His right hip, and the backs of both of his legs."

The circuit court issued an ex parte order of protection on May 14 and set a hearing for June 3. Sharbino answered the petition, asserted that he had been criminally charged in relation to the allegations in the petition, and asked that the circuit court continue the hearing until the criminal case has been resolved. The court reset the hearing for July 8; on that date, the hearing was again continued until November 15.

On October 27, Sharbino filed a complaint for declaratory judgment and asked the circuit court to construe the Domestic Abuse Act to contain an exception for reasonable and moderate corporal punishment by a parent of his or her child. If the statute is not so read, then Sharbino asked for a declaratory judgment that the statute is unconstitutional both on its face and as applied to him. Finally, Sharbino asked that his declaratory-judgment action be consolidated with the order-of-protection case. Also on October 27, Sharbino amended his answer in the order-of-protection case and incorporated his request for declaratory judgment as a counterclaim.

On November 12, the circuit court consolidated the two cases and held a hearing three days later.[1] During the hearing, Graham testified about the weekend that the spanking occurred. Graham picked up MC on Sunday morning, and earlier that morning, Sharbino had called her and said that he had spanked MC with a belt the day before and that MC had

---

[1]At the hearing, both parties agreed that Ark. R. Civ. P. 3(c)(2) does not allow counterclaims in actions filed under the Domestic Abuse Act. Graham did not object to the consolidation of the declaratory-judgment action with the order-of-protection case.

2

marks on him. Graham was not concerned at the time because she understood some discipline was necessary and assumed that Sharbino was referring to red marks. That night as she was getting MC ready for bed, she observed "blue and red marks across both cheeks, and his hip, and down his legs, and on the backs of his legs, and on the sides of his left thigh, and that's when I thought that was a bit much. That was no longer just red marks. Those were bruises." She took pictures of the bruises and text-messaged them to Sharbino along with messages stating,

> This is excessive. I can understand being mad and a whooping leaving welts. But these are freaking BRUISES! I am not ok with that.

> If [I] sent him home to you looking like this you would lose your shit. I know you have a temper just like me and [discipline] needs to be done. But keep your temper and you are a grown man and he is still a 6yr old boy. Also you realize if someone at school saw this they would call DHS.

Sharbino responded,

> Well I've got 4 witnesses that saw me pop him with my belt 4 or 5 times and they seen and know the whole situation no judgment their [sic] I hated whooping [MC] more than anything in this world but he absolutely needed it . . . I hope he learned that he does have to listen etc not bully and tell adults he doesn't have to listen to them cause their [sic] not his daddy when [MC] needs it [I'm] definitely gonna give it.

To which Graham replied,

> I don't care about your witnesses [E]ric it was [excessive]. The whole side of his ass is bruised the backs of his leg. That was not 4 or 5 times that was you losing your temper and beating his ass with a belt. I don't want to see shit like that again.

Graham was concerned for MC's safety, so she called the child-abuse hotline and asked if this could be abuse. She was told yes, and an Arkansas Department of Human Services employee visited her, did a home inspection, and interviewed MC. Graham also

had MC seen by a doctor because one of his hips was especially bruised.

On cross-examination, Graham acknowledged that MC had played T–ball the same day that she took him to the doctor and that Sharbino had attended that T–ball game without incident. But she said that Sharbino posed a threat to MC's health and safety, and she would not change her mind unless Sharbino said he did not intend to spank MC again.

David Faulkner testified that Sharbino and MC, along with some other adults and children, had been fishing at a private pond on his property. He described the shore of the pond as "steep," "slippery," and "with some stumps." Faulkner had seen MC slip and fall on the shore a couple of times, and Faulkner's wife, Debra, had seen him fall a third time. Faulkner also saw Sharbino scolding MC for not listening to and minding the adults, and according to Faulkner, right before everyone gathered for dinner, Sharbino "swatted [MC] a couple times on his butt with his hand." Sharbino did not appear to be angry or out of control. Faulkner thought MC could have been bruised by the falls on the shore but not by the spanking.

Debra Faulkner testified that she had seen MC fall "on his backside" and slide down the shore. She said that there were "a couple of rocks" and some tree roots in the area where MC fell. She also observed Sharbino "giving [MC] a couple of swats" before they ate dinner. She did not see Sharbino use a belt to spank MC.

Miranda Hobbs, who had also been present that day, stated that she had seen MC rubbing his back right hip bone and butt after he had apparently fallen. She said that Sharbino had spanked MC after dinner; specifically, he had "swatted [MC] three times with the belt." Soon after, Sharbino swatted MC two more times with the belt. She later

conceded that the spanking could have happened before dinner. Afterward, MC seemed happy and did not seem hurt.

Sharbino testified that he had spanked MC because he needed discipline and that he (Sharbino) did not injure MC. MC cried during the spanking but stopped afterward, and Sharbino and MC had a heart-to-heart talk. Sharbino also stated that MC bruises easily. Sharbino had seen MC at his T-ball game a few days later and "[t]here was no issue." Sharbino said he believes in corporal punishment but would not be spanking his son again. He had also taken parenting classes and learned alternate forms of punishment.

After a brief recess, the circuit court announced its ruling:

> Based upon the arguments of counsel, credibility of the witnesses, testimony of the parties, evidence properly admitted in before the court, I find that a six month order of protection is warranted. I'm going to provide for visitation under 9-15-206(3). It will be supervised and in public. It will be three hours of visitation on Tuesday nights. There will be four hours on Saturday from one to five, and four hours on Sunday from one to five. As to who it is appropriate for the visitation to be supervised by, I leave it to the attorneys to work out between the two of you.

The court also found that the corporal punishment in this case was not "reasonable and appropriate" and that the "constitutionality issue [was] moot." In its written order, the court found that the corporal punishment inflicted by Sharbino was neither reasonable nor moderate, and "[i]n light of that finding, and after consideration of the Defendant's objections and legal arguments, the Defendant's Counterclaim and Complaint for Declaratory Judgment are denied as moot." Sharbino has timely appealed the circuit court's

order.[2]

Our standard of review following a bench trial is whether the circuit court's findings are clearly erroneous. *Simmons v. Dixon*, 96 Ark. App. 260, 240 S.W.3d 608 (2006). A finding is clearly erroneous when, although there is evidence to support it, the reviewing court on the entire evidence is left with a definite and firm conviction that a mistake has been made. *Id.* Disputed facts and determinations of credibility are within the province of the fact-finder. *Id.*

When a petition for a protective order is filed under the Domestic Abuse Act, the circuit court may provide relief to the petitioner upon a finding of domestic abuse. Ark. Code Ann. § 9-15-205(a) (Repl. 2020). "Domestic abuse" is defined as "[p]hysical harm, bodily injury, assault, or the infliction of fear of imminent physical harm, bodily injury, or assault between family or household members." Ark. Code Ann. § 9-15-103(4)(A) (Repl. 2020).

We first address Sharbino's argument that the circuit court erred in finding that his corporal punishment of MC was neither reasonable nor moderate. Sharbino says the evidence showed that he "calmly" spanked MC to correct his behavior, that none of the witnesses to the spanking saw cause for concern, that he and Graham had agreed to use

---

[2]The six-month final order of protection was entered on 19 November 2021 and expired on 15 May 2022. Generally, a case becomes moot when any judgment rendered would have no practical effect upon a then-existing legal controversy. *Davis v. Brushy Island Pub. Water Auth.*, 375 Ark. 249, 290 S.W.3d 16 (2008). Given this court's holding in *Poland v. Poland*, 2017 Ark. App. 178, 518 S.W.3d 98, Sharbino's appeal of the expired final order of protection is not moot due to the adverse collateral-consequences exception that attends a finding of domestic abuse.

corporal punishment when necessary, that the bruising was consistent with MC falling near the pond, and that he and MC had a positive conversation after the spanking. Sharbino insists that this court should be left with a definite and firm conviction that a mistake has been made.

In support of his argument, Sharbino discusses *Smith v. Murphy*, 2017 Ark. App. 188, 517 S.W.3d 453, which also considered whether an act of corporal punishment qualified as domestic abuse. In *Smith*, the mother of three children sought an order of protection after the children's father had injured one of the children by spanking him with a leather belt, which caused bruising up the child's back, across his buttocks, and down his right leg. The evidence showed that this incident provoked fear and anxiety in all the children, and the injured child required inpatient mental-health treatment. Further, the circuit court found the father not credible or remorseful. In his defense, Smith argued that "child abuse does not include physical discipline of a child when it is reasonable and moderate and is inflicted by a parent or guardian for purposes of restraining or correcting a child."[3] *Id*. at 2, 517 S.W.3d at 455. But the lower court found that the spanking was not reasonable or moderate and entered a five-year order of protection. On appeal, this court held, "We defer to the court's assessment of the witnesses' credibility and its determination that the way Smith struck [Minor Child] with a belt was not a reasonable or moderate discipline technique and affirm." *Id*. at 13–14, 517 S.W.3d at 461.

Sharbino argues that *Smith* is a far cry from this case because *Smith* included evidence

---

[3]This is an exception to the definition of abuse in the Juvenile Code. *See* Ark. Code Ann. § 9-27-303(3)(C)(i)*(a)* (Supp. 2023).

that the father had become enraged at the child for using his tablet and bothering the father while he was playing video games; that the father hit the child repeatedly with the belt while the child screamed; that the child had bruises on his back and down his legs to his ankles; and that the father had a true finding for abuse in a protective-services case in Texas. Here, he contends, there was no evidence that he was angry or out of control, that MC was traumatized, that he had any previous findings of abuse, or that the bruising was extensive. Also, there was no alternative explanation for the child's bruising in *Smith*, but here there was testimony that MC had repeatedly fallen down near the bank of the pond and that the bank contained rocks and tree stumps. Sharbino says that the circuit court clearly erred in not finding this instance of corporal punishment reasonable and moderate.

We hold that the circuit court did not clearly err in finding that Sharbino's corporal punishment of MC was not reasonable or moderate. There is no material difference between this case and *Smith*; in both cases, corporal punishment inflicted on a child caused visible physical injury, which is enough to meet the definition of domestic abuse. The circuit court properly considered all the evidence and testimony before it and made its decision. Having reviewed the record, including the color photos of the child's body after the whipping, we most certainly are not left with a definite and firm conviction that a mistake has been made.

The remainder of Sharbino's argument on appeal focuses on whether there is a "reasonable and moderate corporal punishment" exception in the Domestic Abuse Act and the constitutionality of the Act. These are the issues raised in Sharbino's declaratory-judgment action, and the circuit court found the declaratory-judgment action moot without

addressing the merits. We decline to address these points in the circumstances. As a general rule, the appellate courts of this state will not review issues that are moot. *Pitchford v. City of Earle*, 2019 Ark. App. 251, 576 S.W.3d 103. To do so would be to render advisory opinions, which our appellate courts will not do. *Id.* We see no reason to deviate from the general rule in this case.

Affirmed.

KLAPPENBACH and BROWN, JJ., agree.

*Blair & Stroud*, by: *Barrett S. Moore*, for appellant.

*Legal Aid of Arkansas, Inc.*, by: *Lindsey Schmeidler*, for appellee.