Cite as 2024 Ark. App. 515

# ARKANSAS COURT OF APPEALS

DIVISION II

No. CV-23-145

|  |  |
|---|---|
| ROBERT SMITH<br><br>APPELLANT<br><br>V.<br><br>SHERI PAYNE<br><br>APPELLEE | **Opinion Delivered** October 23, 2024<br><br>APPEAL FROM THE GARLAND COUNTY CIRCUIT COURT<br>[NO. 26DR-22-739]<br><br>HONORABLE JOSEPH P. GRAHAM, JUDGE<br><br>AFFIRMED |

## WAYMOND M. BROWN, Judge

Appellant Robert Smith appeals the Garland County Circuit Court's order entered on November 14, 2022, granting appellee Sheri Payne's petition for a final order of protection against him. On appeal, Robert argues there was insufficient evidence to support a domestic abuse finding and the issuance of the three-year final order of protection. We affirm.

On September 29, 2022, Sheri filed a petition for an order of protection. In her supporting affidavit, Sheri alleged that on the morning of July 19, after becoming suspicious of phone calls and text messages, she contacted a woman by the name of Cindy. During the nearly one-hour phone conversation, Sheri discovered that Robert "was feeding us both a bunch of lies." She stated that she was supposed to pick Robert up from work that morning; however, she informed him that she would not be there to pick him up and that he needed to bring a police officer with him to retrieve his gun from her RV. Sheri alleged that at 6:30 a.m., Robert banged on her door and threatened to break it

down, and once the door was opened, Robert grabbed her wrists and slammed her around, exclaiming that "he was going to end [her.]" Sheri stated that Robert threw her into the living room and slammed her head into the floor; she screamed in an attempt to alert her neighbors. Robert then stood up and ran out of the RV. Sheri additionally alleged that since the incident, Robert had contacted her friend, Carol, and that he contacted another friend, Margie, via a fake social media account. Robert also reached out to Sheri's former neighbor at the RV park inquiring about Sheri. Sheri alleged that she moved out of the RV park after an unknown sticky substance was put into her gas tank, resulting in $1200 in damage. In light of these allegations, the court entered an ex parte temporary order of protection against Robert, prohibiting him from contacting Sheri.

A hearing on the final order of protection was held on November 8. Sheri testified that Robert, her ex-boyfriend, spent many nights with her in her RV, although he had his own home. Cindy lived in Robert's home; he told Sheri that he was Cindy's caretaker. On July 19, Robert received messages from Cindy that he kept "wiping [from] the screen real fast." Further, when he received a phone call from Cindy, he sent Sheri "inside to go put stuff away" while he talked to her.

Sheri stated that Robert, a federal police officer who worked at the passport office, often left his gun with her. On the morning of July 19, after taking Robert to work, she had a couple of drinks and then called him. She told Robert that she was going to call Cindy about the situation. In response, Robert started counting "like I was a child." Sheri testified that she hung the phone up and called Cindy, and the two of them had a fifty-eight-minute conversation, which validated her suspicions. Sheri sent Robert a text message informing him that he needed to bring a police officer with him to retrieve his gun from her RV. Shortly thereafter, Robert showed up, pounded on her door, and said, "If you don't open this fucking door, I am going to break it down." Sheri stated that

2

she opened her RV door because she was scared that he was going to break it down. She testified that Robert then grabbed her wrists, slammed her around, pushed her inside, and entered the RV. He proceeded to slam her body onto the ground. Sheri stated that when she "let out a blood-curdling scream," Robert jumped up and ran out of the door, grabbed his bag, and left. Sheri testified that she had bruises on her spine from being slammed between the countertop and wall; she also had scrapes on her right leg from a magazine rack. Sheri stated that she's in fear of her life because Robert stands to lose his job as a federal police officer because of the incident.

On cross-examination, Sherri acknowledged that she was "livid" after talking to Cindy and told Robert that he was no longer allowed at her house. She testified that the entire altercation lasted less than five minutes, from Robert "banging on [her] door and beating [her] up and leav[ing]." She stated that she was very upset because she "had [her] ass handed to [her]," and she has permanent scars on her body. She testified she believes that Robert will come after her, and she does not care if he loses his job—that it is the consequence of his actions. Sheri testified that Robert had never been violent toward her until that day. There was a video camera in the RV park. Sheri stated that the recording showed Robert entering the park, waiting on a man walking his dog to leave, and then approaching her yard. On redirect, Sheri further explained that the video shows Robert walking around for a period of time until the man with the dog is out of sight, and then Robert approaches her RV. Sheri testified that she is "deathly afraid of [Robert]. [She] had to move."

Vanessa Buirse, Robert's mother, testified next. She stated that she was present at the RV park on the morning of the incident because she did not want Robert to go there by himself in case something happened. Buirse stated that she stood about four car lengths away from the camper and was crouched down beside a car. She stated that from that vantage point, she witnessed Sheri yelling

3

at Robert. She stated that she could see the gun inside the RV on the counter. Robert was reaching to get his gun, and he and Sheri were in a "tussle," and the gun fell on the ground. Buirse testified that Robert picked up the gun while Sheri was hitting him in the back, making threats, and screaming, "I'll have your fucking job." Robert got his gun and duffle bag and left. Buirse said that she did not let Sheri see her because she did not want the situation to escalate. She also denied that there was a man walking a dog in the RV park that morning.

Cindy Jordan, who lives with Robert, was the next witness to testify. Cindy testified that Sheri wanted her to press charges against Robert for beating her; however, Cindy stated that Robert had never been violent toward her. She testified that Sheri had the police do a wellness check on her because she was afraid Robert had hurt her.

Robert testified last. He stated that a coworker dropped him off at the RV park on the morning of July 19, where his mother was waiting for him. Robert said that for the duration of their relationship, Sheri was violent and made threats toward him, stating that she would "bury him" if he ever left her. Robert testified that when he arrived at the RV, the door was open, and he could see his gun and holster sitting on the counter. He then attempted to grab his gun and leave; however, Sheri grabbed the gun and tried to remove the gun from the holster. Robert stated that he held onto the holster, and the gun fell to the ground. He picked up the gun and left with his mother. Robert explained that since the altercation, he has been unable to work his full-time job.

Following the hearing, the court took the matter under advisement. On November 14, a final order of protection was entered, prohibiting Robert from contacting Sheri for a period of three years. Robert now brings this appeal.

4

Robert argues that there was insufficient evidence to support a finding that he committed domestic abuse against Sheri.

The standard of review after an order of protection is granted is whether the circuit court's findings are clearly erroneous.[1] A finding is clearly erroneous when, although there is evidence to support it, the reviewing court on the entire evidence is left with a definite and firm conviction that a mistake had been made.[2] Disputed facts and credibility determinations are within the province of the fact-finder.[3]

The Domestic Abuse Act defines domestic abuse as physical harm, bodily injury, assault, or the infliction of fear of imminent physical harm, bodily injury, or assault between family or household members.[4] Family or household members means spouses, former spouses, parents and children, persons related by blood within the fourth degree of consanguinity, in-laws, any children residing in the household, persons who presently or in the past have resided or cohabited together, persons who have or have had a child in common, and persons who are presently or in the past have been in a dating relationship together.[5] Robert concedes that he meets the statutory definition of family or household member. His sole argument on appeal is the sufficiency of the evidence supporting the finding that he caused Sheri physical harm or bodily injury or that he inflicted fear of imminent physical harm, bodily injury, or assault.

---

[1]*Poland v. Poland*, 2017 Ark. App. 178, 518 S.W.3d 98.

[2]*Id.*

[3]*Bohannon v. Robinson*, 2014 Ark. 458, 447 S.W.3d 585.

[4]Ark. Code Ann. § 9-15-103(4)(A) (Repl. 2020).
[5] *Id.* § 9-15-103(5).

Sheri testified at the hearing that in the early-morning hours of July 19, 2022, after she and Robert had argued about Robert's communications and involvement with another woman, Robert came to her home, pounded on her door, pushed his way inside her RV, and slammed her body around and onto the ground, resulting in bruises and permanent scars. Without objection, photographs depicting scrapes, red marks, and bruises were admitted into evidence.

In its letter opinion, the circuit court stated that the decision came down to an issue of credibility. Robert testified that Sheri attacked him and attempted to gain control of his gun. Robert's mother, Buirse, testified to effectively the same; both denied that Robert had been violent with Sheri. Buirse also testified that there had been no man walking his dog in the RV park when the incident took place. However, a photograph taken from a video recording demonstrates otherwise. Furthermore, the video footage does not show Buirse or her vehicle at the park.

Although Robert would urge us to believe his version of events, the credibility of witnesses is within the province of the fact-finder, and we cannot say that the circuit court's findings were clearly erroneous in light of the testimony and evidence presented at the hearing.

Accordingly, we affirm the final order of protection entered against Robert.

Affirmed.

HARRISON, C.J., and GLADWIN, J., agree.

*Heaton & Harris LLP*, by: *Colin C. Heaton*, for appellant.

*Sherri Arman*, Deputy Prosecuting Att'y, 18th E. Jud. Cir., for appellee.

6